COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Humphreys
Argued by teleconference


STANLEY K. JOYNES, III
                                          OPINION BY
v.   Record No. 1556-00-2        JUDGE ROBERT J. HUMPHREYS
                                         AUGUST 28, 2001
MARIA L. PAYNE

                      UPON A REHEARING

             FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      Gary A. Hicks, Judge

         Edward D. Barnes (Charles E. Powers; Barnes &
         Batzli, P.C., on brief), for appellant.

         James C. Roberts (Dawn B. DeBoer; Melissa J.
         Roberts; Mays & Valentine, L.L.P., on brief),
         for appellee.


     Stanley K. Joynes appealed a final decree of divorce in

which the circuit court granted his wife, Maria L. Payne, a

divorce, granted Payne custody of the parties' two children,

distributed the parties' marital property, and granted Payne

spousal support, child support, and attorney's fees.  Joynes

alleged that the trial court erred in:  (1) awarding custody of

the parties' children to Payne; (2) failing to allow Joynes to

present additional evidence after the close of evidence; (3)

failing to establish May 28, 1999 as the date of the custody

award; (4) awarding the ordered level of spousal support; (5)

failing to specify a termination date for the spousal support

awarded; (6) awarding the ordered level of child support; (7)

awarding Payne attorney's fees; and (8) failing to appropriately consider the evidence regarding the equitable distribution of the parties' property. Payne asserted on cross-appeal that the trial court erred in assessing against her a negative non-monetary contribution. In the alternative, Payne contended that the trial court improperly quantified the negative non-monetary contribution. By published opinion dated May 8, 2001, we affirmed in part, and reversed and remanded in part.

By order entered June 19, 2001, we stayed our previous decision and granted Joynes' motion for rehearing based on Joynes' contention that the reversal and remand on the issue of Payne's child support obligation amounted to a judgment allowing an imputation of income at a lower standard for spousal support than that used for child support, which he argued was contrary to established case law and statutes. Upon reconsideration of this matter and for the reasons that follow, we find no reversible error and affirm the judgment of the trial court in its entirety.

## I. Background

"Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

The parties were married on August 9, 1980. There were two children of the parties' marriage: Elizabeth, born August 15, 1991, and Alexandra, born January 30, 1995. In January 1998, the parties agreed to separate. On July 2, 1998, Joynes filed his bill of complaint. The parties did not physically separate until November 27, 1998. From that time, until the resolution of the matter, the parties operated under an agreed upon pendente lite order.

An evidentiary hearing was held before the Commissioner in Chancery on May 3, 4, 5, 6, 7, and 10 of 1999. An additional hearing was held before the commissioner on May 29, 1999. The testimony presented during the hearing established that Payne had suffered from bulimia since her college years. Payne experienced periodic bouts of the disorder until approximately 1993, when a partner with the law firm where she worked informed Joynes of Payne's condition. Although Payne had denied any such disorder in the past, Payne admitted to her problem at that time. Since then, she has come to terms with the disorder and has sought treatment. At the time of the trial, Payne was "medically cured" of the bulimia but continued to consult with her physicians on a regular basis.

It was undisputed during the trial that the parties' children were physically healthy and enjoyed a good relationship with both parents. Payne had taken an extended leave of absence

- 3 -

from her position as a partner in a law firm both before and after the birth of Elizabeth. In January, 1993, Payne reduced her employment to part-time, working only three days per week. She took a third extended leave of absence after the adoption of Alex, the parties' second child. Payne then returned to work part-time until March, 1997, when she ceased work in order to attend to her family responsibilities. Joynes testified that he objected to Payne's decision to terminate her employment.

Until May, 1996, Joynes worked a considerable number of hours as a partner with another law firm. At that time, he was diagnosed with cancer and underwent surgery and treatment. Because of his illness, Joynes cut back his work hours but continued to work several hours every day.

Testimony established that Joynes enjoyed a good relationship with his family and had several family members living close by, who had a close relationship with the children. Payne's family resides in Florida, and, although her relationship with them was strained at one time, evidence was presented demonstrating that the relationship had improved. However, she and the children did not spend time with her family on a regular basis.

During the parties' separation, prior to the entry of the final decree, the evidence established that Payne allowed Joynes visitation as agreed upon in the decree. However, although

Payne allowed Joynes additional visitation, she did not allow Joynes additional visitation on every occasion that Joynes requested it.

After the close of the evidence and upon review of written memoranda submitted by both parties, the commissioner filed his eighty-eight page report on January 4, 2000. The parties filed exceptions to the report and on March 27, 2000, argued their exceptions to the trial court. On April 10, 2000, Joynes filed a motion with the trial court, requesting a hearing to present new evidence. The trial court denied the motion on April 11, 2000 during a telephone conference among both parties' counsel and the court. After fully reviewing the extensive transcript, exhibits and legal memoranda, the trial court affirmed the commissioner's award on May 5, 2000. The final decree was entered on June 5, 2000.

On appeal, Joynes raises seventeen assignments of error. Payne, on cross-appeal, alleges three additional errors.[1]

## II. Custody

We first note that:

> [w]hile the report of a commissioner in
> chancery does not carry the weight of a
> jury's verdict, Code § 8.01-610, it should

---

[1] Following oral argument, Joynes filed a "Motion to Strike" from the record comments made by counsel for Payne in his argument before us. This motion was opposed by Payne. We are cognizant of the facts contained in the record and we note that counsel for Joynes had the opportunity for rebuttal argument. Accordingly, we decline to grant Joynes' motion.

> be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence. This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report. On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong
> . . . .

Hill v. Hill, 227 Va. 569, 576-77, 318 S.E.2d 292, 296 (1984).

With regard to the award of custody, Joynes argues that the commissioner and the trial court erred in: (1) failing to grant Joynes custody because the evidence established that Payne's actions had been adverse to the best interests of the children; (2) applying an erroneous burden of proof with respect to Joynes' petition for custody; (3) failing to substantively consider the factors set forth in Code § 20-124.3; (4) failing to consider Joynes as a custodial parent; (5) refusing Joynes' request to present additional evidence after the close of evidence; and (6) failing to establish the date of the award of custody as May 28, 1999, the date of the close of evidence.

In awarding Payne physical custody of the children, the commissioner found as follows with regard to Payne's bulimia:

> [I]n order to obtain physical custody solely as a result of defendant's bulimia, I think the plaintiff must show that the defendant is not consistently alert to any signs or symptoms of relapse and willing to seek immediate treatment, or that defendant does not fully understand the potential genetic predisposition towards the illness and the

role environmental factors may play in developing an eating disorder in children. The evidence does not prove the defendant lacking in either measure.

    \*       \*       \*       \*       \*       \*       \*

For all of the above reasons, I find that defendant's bulimic condition, standing alone, is not a sufficient reason to award sole custody of Elizabeth and Alex to the plaintiff.

The commissioner then specifically discussed and considered each of the factors listed in Code § 20-124.3, as it read during the hearing of this matter.[2] The commissioner also recognized that

---

[2] Code § 20-124.3 states as follows:

In determining best interests of a child for purposes of determining custody or visitation arrangements including any pendente lite orders pursuant to § 20-103, the court shall consider the following:

1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;

2. The age and physical and mental condition of each parent;

3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;

4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;

serving the best interests of the children was his primary concern.  He noted that Payne had been the primary nurturer and care-provider since the children's births.  He also noted that Payne's "possessory stance" toward Joynes, with regard to visitation, could have a negative impact on the relationship between Joynes and the children.  In addition, he stated that Joynes' "forays" with another woman caused him some concern. Yet, he found both Joynes and Payne to be fit parents and ultimately ruled that, "[i]n consideration of the evidence presented pursuant to Virginia Code § 20-124.3, and the applicable case law, [he was] constrained to find that [Payne] should remain the physical custodian for Elizabeth and Alex."

5.  The role which each parent has played and will play in the future, in the upbringing and care of the child;

6.  The propensity of each parent to actively support the child's contact and relationship with the other parent, the relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in matters affecting the child;

7.  The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;

8.  Any history of family abuse as that term is defined in § 16.1-228; and

9.  Such other factors as the court deems necessary and proper to the determination.

Code § 20-124.3 specifies the factors a court "shall consider" in determining the "best interests of a child for . . . custody or visitation." Although the trial court must examine all factors set out in Code § 20-124.3, "it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 346, 349 S.E.2d 422, 426 (1986)). As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal. See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992).

Here, the commissioner's extensive report demonstrates that he considered the statutory factors and made his decision based upon the children's best interests. Despite Joynes' assertion to the contrary, the record is replete with evidence in support of the commissioner's recommendation. See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.").

Furthermore, the commissioner merely considered Joynes' "forays" with another woman, as well as Payne's past role as the

primary nurturer and care-giver for the children. He did not rely solely on these factors in reaching his determination. In fact, he specifically stated that he did not rely on Joynes' activities with another woman in reaching his decision. Thus, the commissioner's consideration of these factors is not error; rather, it merely demonstrates his resolve in carefully considering the voluminous amount of evidence presented and its relationship to the best interests of these children. See Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999) (holding that the finder of fact is given broad discretion in determining what promotes the children's best interests).

Joynes additionally argues that the commissioner "imposed upon [him] an erroneous burden of proof with respect to his petition for custody" when he found that

> Joynes could only be awarded custody if he could show that [Payne was] not constantly alert to any signs or symptoms of relapse and willing to seek immediate treatment, or that [Payne did] not fully understand that potential genetic predisposition towards the illness and the role environmental factors play in developing an eating disorder in children.

However, Joynes misstates the commissioner's holding.

The commissioner held that "in order [for Joynes] to obtain physical custody solely as a result of defendant's bulimia," (emphasis added), the evidence must demonstrate the existence of a situation such as that described and set forth above. In so

holding, the commissioner recognized that Joynes' custody case rested primarily on his argument that Payne was unfit to act as the physical custodian of the children due to her bulimic condition. The weight to be placed on this single factor, namely Payne's physical and mental condition, was within the discretion of the commissioner as fact finder. See Sargent, 20 Va. App. at 702, 460 S.E.2d at 600.

Joynes next argues that the trial court violated his due process rights by refusing to allow him to present additional evidence almost one year after the close of evidence in this matter. Simultaneously, Joynes argues that the trial court erred in failing to promptly adjudicate the matter. As a remedy, Joynes argues that the date of the award of custody should be May 28, 1999, the date of the close of evidence, instead of June 5, 2000, the date of the final decree.

Joynes is correct in noting that "[d]ue process requires the courts to comply strictly with the statutory scheme for disposition of child custody cases." Rader v. Montgomery County, 5 Va. App. 523, 528, 365 S.E.2d 234, 237 (1988). Further, Code § 20-124.2 requires the trial court to "provide prompt adjudication upon due consideration of all the facts." However, introduction of additional evidence into the record after the commissioner has filed his report is treated as a motion to receive after-discovered evidence. See id.; see also

Mundy v. Commonwealth, 11 Va. App. 461, 480, 390 S.E.2d 525, 535, aff'd on reh'g en banc, 399 S.E.2d 29 (1990).  Four requirements must be met before a record can be reopened to receive additional evidence:  (1) the evidence must have been discovered after the record was closed; (2) it could not have been obtained prior to the closing of the record through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative, or collateral; and (4) it is material, and as such, should produce an opposite result from that contained in the commissioner's report.  Id.

Here, the record does not disclose the nature of the evidence, nor does it describe when and how the evidence was obtained.  More importantly, the record does not disclose whether Joynes described to the trial court the nature of the evidence and the circumstances surrounding his request for an additional hearing.  Accordingly, we cannot consider Joynes' argument in this regard on appeal.  See Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992) ("It is well settled that when a party's evidence has been ruled inadmissible, the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was admissible.").  Finally, we find that the trial court's ruling of May 5, 2000 and final decree of June 5, 2000

- 12 -

were sufficiently "prompt" in light of the voluminous pleadings and evidence in this matter.[3]

### III.  Spousal Support

Joynes next argues that the trial court erred by using an "erroneous standard" in imputing income to Payne in its determination of spousal support.  Joynes also argues that the trial court awarded Payne spousal support in excess of need and failed to give substantive consideration to the statutory factors set forth in Code § 20-107.1(E).  Finally, Joynes contends that the trial court erred in failing to specify a termination date for the spousal support award, as required by Code § 20-107.1(C).

"In awarding spousal support, the chancellor must consider the relative needs and abilities of the parties.  He is guided by the . . . factors that are set forth in Code § 20-107.1. When the chancellor has given due consideration to these factors, his determination will not be disturbed on appeal

---

[3] As stated previously, the hearing before the commissioner spanned over seven days.  Subsequently, both parties were given time before the trial court to argue their exceptions to the commissioner's report, and the trial court held yet another hearing, by telephone conference, to hear argument and make a ruling concerning Joynes' request to submit additional evidence. Moreover, the joint appendix on appeal, which does not contain the full record, includes over 4,000 pages of pleadings, exhibits and transcripts, reflecting the complexity of the initial proceedings in this matter.

- 13 -

except for a clear abuse of discretion."[4]  <u>Collier v. Collier</u>, 2

Va. App. 125, 129, 341 S.E.2d 827, 829 (1986).  "The trial court

---

[4] Code § 20-107.1(E) provides the following:

> The court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery and any other ground for divorce under the provisions of subdivision (3) or (6) of § 20-91 or § 20-95.  In determining the nature, amount and duration of an award pursuant to this section, the court shall consider the following:
>
> 1.  The obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature;
>
> 2.  The standard of living established during the marriage;
>
> 3.  The duration of the marriage;
>
> 4.  The age and physical and mental condition of the parties and any special circumstances of the family;
>
> 5.  The extent to which the age, physical or mental condition or special circumstances of any child of the parties would make it appropriate that a party not seek employment outside of the home;
>
> 6.  The contributions, monetary and non-monetary, of each party to the well-being of the family;
>
> 7.  The property interests of the parties, both real and personal, tangible and intangible;

is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Woolley, 3 Va. App. at 345, 349 S.E.2d at 426. However, its findings "must have some foundation based on the evidence presented." Id.

The evidence demonstrated that at the time Payne left her part-time employment in March, 1997, she was making

---

8. The provisions made with regard to the marital property under § 20-107.3;

9. The earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity;

10. The opportunity for, ability of, and the time and costs involved for a party to acquire the appropriate education, training and employment to obtain the skills needed to enhance his or her earning ability;

11. The decisions regarding employment, career, economics, education and parenting arrangements made by the parties during the marriage and their effect on present and future earning potential, including the length of time one or both of the parties have been absent from the job market;

12. The extent to which either party has contributed to the attainment of education, training, career position or profession of the other party; and

13. Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

approximately $80,000 per year.  Payne had made $94,430 in 1992,

when she was still working on a full-time basis.  At the time of

the trial and for a number of years preceding the trial, Joynes

earned approximately $300,000 per year.  Joynes presented

testimony establishing that Payne could earn approximately

$170,386 per year, were she to return to full-time employment

with the law firm she had previously worked for.

In making his determination concerning spousal support, the

commissioner specifically considered each of the statutory

factors set forth in Code § 20-107.1(E).  Moreover, the

commissioner, quoting Srinivasan v. Srinivasan, 10 Va. App. 728,

734, 396 S.E.2d 675, 679 (1990), initially recognized that a

party who "'seeks spousal support is required to earn as much as

he or she reasonably can to decrease the amount of support

needed.'"  He found that Payne had "offered no factual basis

which would preclude her from working" and "no legal basis why

income should not be imputed to her."

> When asked to impute income to a parent, the
> trial court must consider the parent's
> earning capacity, financial resources,
> education and training, ability to secure
> such education and training, and other
> factors relevant to the equities of the
> parents and children.  The burden is on the
> party seeking the imputation to prove that
> the other parent was voluntarily foregoing
> more gainful employment, either by producing
> evidence of a higher-paying former job or by
> showing that more lucrative work was
> currently available.  The evidence must be
> sufficient to enable the trial judge

- 16 -

> reasonably to project what amount could be
> anticipated.

Niemiec v. Commonwealth, Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998).  The commissioner clearly considered these factors in reviewing the evidence presented and in finding that "for the last five years of her employment, [Payne's] maximum annual salary was $80,990," that at no time during her career had Payne earned the $170,386 figure projected by Joynes' witness, "nor ha[d] she been capable of earning such an amount."  Indeed, "we have held that the court, in setting support awards, must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future." Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679 (emphasis added).  Thus, the commissioner did not abuse his discretion in refusing to accept the testimony of Joynes' witness and, instead, basing his determination on the past earning capacity demonstrated by Payne.   "In awarding spousal support, the chancellor must consider the relative needs and abilities of the parties.  He is guided by the [thirteen] factors that are set forth in Code § 20-107.1."  Collier, 2 Va. App. at 129, 341 S.E.2d at 829.  "In fixing the amount of support, the trial 'court must look to the financial needs of the [receiving party], her age, physical condition and ability to earn, and balance against these circumstances the financial ability of the

[other spouse] to pay, considering his income and his ability to earn.'"  Alphin, 15 Va. App. at 401, 424 S.E.2d at 575.

As noted above, the commissioner very carefully considered the statutory factors in fixing the support award.  In particular, the commissioner considered Payne's earning capacity and appropriately imputed income to her based upon the evidence in the record which the commissioner, as the fact finder, accepted as credible.  See Code § 20-107.1(E)(9).  The commissioner's consideration of the decisions concerning Payne's career which the parties made during their marriage was not error.  The commissioner did not conclude Joynes continued to be bound by any tacit agreement he may have made during the marriage to Payne's working part-time, thereby relieving Payne of her duty "to earn as much as . . . she reasonably can." Rather, the record supports the conclusion that the commissioner considered such an agreement, if in fact he considered it at all, only insofar as it impacted Payne's ability to earn, an appropriate factor for consideration pursuant to Code § 20-107.1(E)(11).

We find that in applying these factors and in weighing the relative needs, earning capacities and abilities of the parties, their ages, the duration of the marriage, and the manner in which the parties were accustomed to living during the marriage,

the commissioner did not abuse his discretion in imputing income to Payne or in determining the spousal support award.

Each party also disputes several amounts utilized by the commissioner in determining each party's monthly expenses/income. Joynes asserts that, in determining Payne's adjusted monthly need of $1,051, the commissioner failed to consider the $800 per month rental income received by Payne from a condominium she retained, as well as interest income Payne would receive from assets she retained as a result of the equitable distribution award. Contrary to Joynes' assertion otherwise, the record demonstrates that the commissioner expressly considered the rental income from the parties' condominium, as well as the potential interest income resulting from the division of marital property.

Payne argues that the commissioner arbitrarily reduced several of the monthly expenses that she had claimed in determining her adjusted need and that the commissioner failed to consider her necessary expense of $309.60 per month for real estate expenses. We find no abuse of discretion in the commissioner's reduction of several of Payne's alleged expenses. Further, the record established that the commissioner indeed considered the evidence that Payne presented with regard to the $309.60 real estate tax expense.

As stated above, the commissioner carefully considered the necessary factors and based his determination not on a specific dollar amount, but upon the evidence presented and the relative needs of the parties and their ability to pay. We find no authority requiring the commissioner to determine a spousal support award based upon an exact monetary figure, nor has Joynes or Payne presented any such authority. To the contrary, we have held that "in fixing spousal support, a trial court has broad discretion which should not be interfered with by an appellate court unless it is clear that some injustice has been done." Papuchis v. Papuchis, 2 Va. App. 130, 133, 341 S.E.2d 829, 831 (1986). Thus, we find that the evidence sufficiently supports the commissioner's determination and, therefore, find no abuse of discretion.

Finally, Code § 20-107.1 provides that "[t]he court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof." Contrary to Joynes' argument, this statute does not require the trial court to specify the date of termination of a spousal support award. In fact, the language allows the trial court to order an award for an undefined duration. Thus, we find no abuse of discretion in

the trial court's failure to specify a date of termination for the award.

## IV.  Child Support

Joynes next contends that the trial court erred in directing an upward deviation from the support dictated by the guidelines, for the payment of Elizabeth's private school tuition.  Joynes also contends that the trial court "failed to issue a ruling with respect to [Payne's] child support obligation."

"Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence."  Smith v. Smith, 18 Va. App. 427, 433, 444 S.E.2d 269, 274 (1994).  Joynes contends that the trial court lacked statutory authority to order payments of child support for educational expenses.  However, Code § 20-108.1(B) clearly states that the presumptive child support amount may be rebutted.  Such a finding shall be determined by considering several factors "affecting the obligation, the ability of each party to provide child support, and the best interests of the child."  Code § 20-108.1(B).  One of these factors is "[d]irect payments ordered by the court for . . . education expenses, or other court-ordered direct payments for the benefit of the child."  Code § 20-108.1(B)(6).

We have applied this language in finding that "a parent may be required to pay for private educational expenses, even though such expenses exceed the guidelines, when there is a demonstrated need for the child to attend private school and the parent has the ability to pay." Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 704 (1999) (citing Solomond v. Ball, 22 Va. App. 385, 391, 470 S.E.2d 157, 160 (1996)). In making this determination, the trial court must consider "factors such as the availability of satisfactory public schools, the child's attendance at private school prior to the separation and divorce, the child's special emotional or physical needs, religious training, and family tradition." Solomond, 22 Va. App. at 391, 470 S.E.2d at 160.

In this case, it is clear that the commissioner considered each of these factors in reaching his determination. Joynes' argument that the commissioner should have given greater weight to factors one and three is simply not supported by law. Instead, the commissioner was merely required to consider these factors in determining whether there was a need for Elizabeth to attend a private school, and whether the parents possessed the ability to pay. We find that there was sufficient evidence to support the commissioner's determination and, therefore, that there was no abuse of discretion.

Joynes next argues that the trial court failed to address Payne's child support obligation. Joynes correctly states that "[b]oth parents owe a duty of support to their minor children" and that the obligation is calculated by considering the "combined monthly gross income" of both parents. Bennett v. Commonwealth, Dep't of Soc. Servs., 22 Va. App. 684, 691, 472 S.E.2d 668, 672 (1996); see Code § 20-108.2. Here, the commissioner clearly considered both the imputed gross income to Payne of approximately $80,000 per year, as required by Code § 20-108.1(B)(3), and Joynes' annual gross income in determining the amount of support each parent would provide. We acknowledge the principles that "parents cannot contract away their children's rights to support" and that a court "can[not] . . . be precluded by agreement from exercising its power to decree child support." Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994). However, we find no indication that the level of income the commissioner imputed to Payne was based on the conclusion that any agreement between the parties relieved Payne of any portion of her duty to support her children. See Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993) ("While a family is intact, the parents' choice of occupations and the family's standard of living are left to the parents' discretion as long as the children's basic needs are met . . . . After divorce, although a parent may voluntarily terminate his or her

employment, he or she may not do so to the detriment of support

obligations to the children.").  Rather, as we held in regard to

spousal support, any agreement of the parties was relevant

insofar as it impacted not on Payne's duty to support her

children but her ability to do so, i.e., her earning capacity

and ability to obtain full-time employment following the

dissolution of the marriage.

The commissioner, by way of his very detailed and lengthy

report, clearly considered the relevant evidence pertaining to

the necessary factors prior to making his determination

concerning the child support award.  See Head v. Head, 24 Va.

App. 166, 178, 480 S.E.2d 780, 786-87 (1997) (holding that the

presumptive amount is rebuttable and that the court may deviate

from the presumptive amount if such amount is determined to be

unjust or inappropriate, in consideration of any relevant

evidence pertaining to the factors set forth in Code §§ 20-107.2

and 20-108.1).

Based upon the above, we find no abuse of discretion with

regard to the commissioner's determination of child support in

this matter.[5]

---

[5] We note that although the trial court affirmed and
incorporated the commissioner's report and factual
determinations into the final decree, the trial court awarded
child support in a different amount than that recommended by the
commissioner, presumably based upon the actual amount of private
school tuition.  To the extent that the final amount of child

## V. Equitable Distribution

Joynes next argues that the trial court's equitable distribution award was erroneous to the extent it classified contributions made to Joynes' 401(k) plan after March, 1998, classified his 1998 bonus as marital property, classified certain property as Payne's separate property, classified Joynes' split-dollar life insurance policy as marital property, and divided the marital assets on a 53%/47% basis.[6]

---

support ultimately awarded differs from the commissioner's award, we affirm the award of the trial court.

[6] Code § 20-107.3(E) states that:

> The amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment shall be determined by the court after consideration of the following factors:
>
> 1. The contributions, monetary and nonmonetary, of each party to the well-being of the family;
>
> 2. The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties;
>
> 3. The duration of the marriage;
>
> 4. The ages and physical and mental condition of the parties;
>
> 5. The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan, 10 Va. App. at 732, 396 S.E.2d at 678. Here, after hearing the evidence, the commissioner ruled that the parties' final separation occurred on November 28, 1998, when the parties physically separated. We find the evidence sufficient to support this finding and find that it is not "plainly wrong." Accordingly, the commissioner correctly determined that all payroll deductions earned and/or paid before November 28, 1998 were marital property pursuant to Code § 20-107.3.

---

subdivisions (1), (3) or (6) of § 20-91 or § 20-95;

6. How and when specific items of such marital property were acquired;

7. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;

8. The liquid or non-liquid character of all marital property;

9. The tax consequences to each party; and

10. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

Furthermore, we find no error in the commissioner's classification of the entire lump-sum contribution made to the 401(k) plan in 1998 as marital property.  No evidence was presented to the commissioner establishing the amount or percentage of the contribution that could be attributable to the post-separation period of the parties.  Therefore, his recommendation in this regard was not plainly wrong.

Next, we find no error in the commissioner's determination that a portion of the bonus received by Joynes in 1998 was marital property.  As the commissioner noted, although Joynes was required to be employed by his employer at the end of 1998, one month after the parties' separation, in order to receive the bonus, the bonus represented compensation for Joynes' labor during the entire year of 1998, and, thus, was property acquired prior to the separation.  See Luczkovich v. Luczkovich, 26 Va. App. 702, 496 S.E.2d 157 (1998) (holding that severance pay received post-separation was not marital property as the condition to receive the pay was related to the sale of the corporation, not to husband's work during his marriage).

We also find no error in the commissioner's determination of certain property as Payne's separate property.  The commissioner apparently relied upon discovery responses propounded by Payne, designating certain property as separate property, as well as discovery responses propounded by Joynes

denying that the property was separate property. "All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property. . . . The party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." Stroop v. Stroop, 10 Va. App. 611, 614-15, 394 S.E.2d 861, 863 (1990). The valuation by the trial court "cannot be based on 'mere guesswork.' [However,] [t]he burden is on the parties to provide the trial court sufficient evidence from which it can value their property." Bosserman v. Bosserman, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989) (quoting Taylor v. Taylor, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988)).

On appeal, Joynes has not pointed with specificity to any item for which the commissioner was demonstrably in error in its classification. Therefore, as the commissioner had at least some evidence, which he found credible, upon which to base his decision concerning the parties' personal property, we cannot say on the record before us that he abused his discretion in awarding Payne the designated items.

We further find that the commissioner did not err in classifying a portion of Joynes' split-dollar life insurance policy as marital property, despite the fact that Joynes could only receive it based upon the occurrence of a future event. A

witness from Joynes' employer testified that the plan was a "deferred compensation" plan. Such benefits are classified as marital property pursuant to Code § 20-107.3(G).

Finally, we see no error in the commissioner's distribution of the assets based upon his consideration of the factors set forth in Code § 20-107.3(E). The commissioner clearly considered each of the factors required, in determining that Joynes' higher level of compensation entitled him to more than one-half of the assets, while Payne's monetary contributions, as well as non-monetary contributions, also entitled her to a substantial proportion of the assets. The record was replete with evidence supporting this determination. Accordingly, we cannot say that the commissioner abused his discretion in fashioning the award in this manner.

## VI. Attorney Fees

Joynes finally argues that the trial court inappropriately awarded Payne 45% of her attorney fees as well as certain costs, as recommended by the commissioner. We find no merit in Joynes' argument that Payne was not a prevailing party, and, therefore, not entitled to fees.

An award of attorney's fees is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion. See Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). The key to a proper

award of counsel fees is reasonableness under all the circumstances.  See McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

Here, the commissioner very carefully considered the claims involved in the divorce proceedings, as well as the complexity of the matter, the outcome of the entire proceedings, and the nature of the expenses, in determining his award.  We find no abuse of discretion in the commissioner's recommendation, or the trial court's award under the circumstances of this case.

### VII.  Negative Imputation of Income

Finally, Payne asserts on cross-appeal that the commissioner erred in imputing a negative non-monetary contribution to her based on her termination of employment.  In the alternative, Payne argues that the commissioner incorrectly quantified the negative non-monetary contribution.

As stated above, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence."  McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994).  We have held that

> "[c]ircumstances that lead to the
> dissolution of the marriage but have no
> effect upon marital property, its value, or
> otherwise are not relevant in determining a
> monetary award, need not be considered.  A
> trial court may only consider those
> circumstances leading to the dissolution of
> the marriage, that are relevant to

- 30 -

> determining a monetary award in order to
> avoid an unreasonable result."

O'Loughlin v. O'Loughlin, 20 Va. App. 522, 527, 458 S.E.2d 323,
326 (1995) (quoting Aster v. Gross, 7 Va. App. 1, 5-6, 371
S.E.2d 833, 836 (1988)).  Here, the commissioner apparently
viewed Payne's conduct in terminating her employment as a factor
leading to the dissolution of the marriage and considered its
effect on the marital property.  Indeed, Joynes testified that
he was against Payne's termination of employment.  Thus, we
cannot hold that the trial court abused its discretion in
determining that Payne's action in this regard constituted a
negative non-monetary contribution to the marriage.
Furthermore, we find no authority requiring the trial court to
value the negative non-monetary contribution on a
dollar-for-dollar basis.  Accordingly, we find no error in the
commissioner's failure to consider the child care expenses the
parties would have paid had Payne continued to work in
determining the effect of Payne's negative non-monetary
contribution.

We do not consider Payne's additional argument regarding
the quantification of the negative non-monetary contribution
because she raised no exception in this regard before the
commissioner and trial court and, therefore, failed to properly
preserve this issue for appeal.  See Rule 5A:18.

- 31 -

In summary, we affirm the judgment of the trial court on each of the issues raised by the parties.  Further, we do not find an award of attorney fees, in connection with this appeal as requested by Payne in her response brief, to be appropriate.

Affirmed.
