COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


IRA VINCENT HOFFMAN

   v.   Record No. 0103-03-4

DEBORAH LOUISE CASS HOFFMAN                    MEMORANDUM OPINION* BY
                                               JUDGE WALTER S. FELTON, JR.
DEBORAH LOUISE CASS HOFFMAN                    MAY 11, 2004

   v.   Record No. 0136-03-4

IRA VINCENT HOFFMAN


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
J. Howe Brown, Jr., Judge Designate

Donald K. Butler (Rae H. Ely; ButlerCook; Rae H. Ely &
Associates, on briefs), for Ira Vincent Hoffman.

Monica J. Chernin (Christian A. Brashear; The Law Offices of
Monica J. Chernin, on briefs), for Deborah Louise Cass Hoffman.


      Ira Vincent Hoffman (husband) and Deborah Louise Cass Hoffman (wife) each appeal

from various rulings of the Circuit Court of Culpeper County arising out of their divorce

proceedings.  The parties contend that the trial court erred in its judgment concerning equitable

distribution, spousal support, reservation of future spousal support, the admission of certain

evidence, and attorney's fees.  We affirm the judgment of the trial court.

I.  BACKGROUND

      "'Under familiar principles we view the evidence and all reasonable inferences in the

light most favorable to the prevailing party below.'"  Alphin v. Alphin, 15 Va. App. 395, 399,

      * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

424 S.E.2d 572, 574 (1992) (quoting Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "Where, as here, the court hears the evidence *ore tenus*, its findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Id.

The parties married in 1976. At that time, husband was forty years old, and lived and worked on his parents' farm. Wife was recently divorced, and approximately five years younger than husband. She owned a residence, which she acquired from her previous marriage, but which was in a poor state of repair at the time the parties married. Following their marriage, the parties initially resided in husband's parents' home. After repairs were made, the parties moved into wife's residence. Two children were born of the marriage, both of whom were emancipated at the time of the parties' divorce.

The parties separated in May 1997 when husband moved from the marital residence. In July 2001, husband filed for divorce, on the ground that the parties had lived separate and apart for a period in excess of one year. On September 19, 2002 and November 7, 2002, the trial court heard evidence *ore tenus*.

On November 7, 2002, the court granted a divorce to husband on the ground of the parties' one-year separation. As part of its equitable distribution of the marital estate, the trial court classified the following as marital property: a timeshare unit purchased by the parties during the course of the marriage; wife's investment account with Edward D. Jones & Company (Edward Jones) valued at $23,793.51; and husband's Edward Jones investment account valued at $471,467.97. It valued the property as of June 3, 1998, the valuation date agreed to by the parties. The trial court awarded to wife the full value of her Edward Jones account valued at $23,793.51; the timeshare valued at $3,500; and $175,000 of husband's Edward Jones account. It also determined that all debt held in each party's name was to be the responsibility of the party

in whose name the debt was incurred. The trial court classified the marital residence, titled solely in the wife's name, and acquired by her in the dissolution of her previous marriage, as the wife's separate property.

After the parties separated, wife obtained a bank loan of $85,000 secured by the residence. She used $65,000 of the loan proceeds to repay substantial credit card debt incurred during the course of the marriage. Prior to the final decree of divorce, wife sold the residence for $129,500. The trial court adopted $129,000 as the value of the property for equitable distribution purposes. Wife received $35,000 from the sale of the residence, after repaying the bank loan and deducting the costs of the sale. The trial court awarded neither party spousal support or attorney's fees.

On December 12, 2002, the trial court memorialized its findings in a written decree. Both parties filed exceptions to the decree, and each appealed various rulings of the trial court.

## II. HUSBAND'S APPEAL, RECORD NO. 0103-03-4

Husband contends that the trial court erred in its classification of his investment account as marital property; in its classification of the marital residence as wife's separate property; and in its distribution of the marital estate.

### A. EQUITABLE DISTRIBUTION

#### 1. Husband's Brokerage Account

Husband contends the trial court erred in classifying his Edward Jones account as marital property rather than as his sole, separate, property. He argues that all the funds in that account were funds he inherited from his father and that his evidence was sufficient to trace those funds solely to the inheritance. We disagree.

In resolving the equitable distribution of the marital property, the trial court must determine "the legal title as between the parties"; classify the parties' property as "marital,"

"separate," or "part separate and part marital"; and, determine "the ownership and value" of the parties' property. Code § 20-107.3(A); see von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997). Property acquired during marriage by either party, and before the last separation of the parties, is presumed to be marital "in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2); see Gilman v. Gilman, 32 Va. App. 104, 116, 526 S.E.2d 763, 769 (2000) (citations omitted). The party claiming that property acquired during the marriage is separate property bears the burden of rebutting the marital property presumption by credible evidence. Stainback v. Stainback, 11 Va. App. 13, 18, 396 S.E.2d 686, 689 (1990).

Husband asserts that Code § 20-107.3(A)(1) provides that separate property includes "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party." Husband testified that he opened his Edward Jones account solely with funds he inherited from his father, Ira Vincent Hoffman, Sr., who died a widower in 1990, leaving husband as his sole heir. He further testified that the substantial deposits he made to the account over several years were from the same source. Over wife's objection, the trial court admitted Ira Vincent Hoffman Sr.'s probate file. The file revealed that husband received an inheritance of $207,781.13 from his father's estate and that husband, as executor of his father's estate, filed a final accounting of the distribution of the estate with the commissioner of accounts on May 8, 1992.

Todd Brown, an investment representative with Edward Jones, testified that on February 25, 1992, husband opened his account with an original deposit of $50,000. According to Brown, husband followed the initial deposit with a deposit of $100,000 on April 6, 1992; and another $15,000 deposit in March of 1993. In April of 1993, Brown testified that husband deposited a "personal check" for $1,000 and another check for $14,000. The last large deposit of $11,000 was made in October 1993. Husband testified that he had only one checking account, the one he

used both for business and family. None of the records in evidence from husband's personal/business checking account, concededly marital property, reflect any check written to the Edward Jones account.

The trial court concluded that husband's "bold assertion," that the only funds in the Edward Jones account were from his inheritance, was insufficient evidence to overcome the marital presumption. See Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."). Here, the trial court stated:

> [T]he burden is on him to show tracing and I don't think you show that by simply saying I inherited money from my parents and it went into this account. I think you've got to trace it by showing where the money went and that it wasn't commingled with other money and that it went directly into the brokerage account and he didn't do that.

See Anderson v. Anderson, 29 Va. App. 673, 685-86, 514 S.E.2d 369, 375 (1999) (finding that, under the facts of that case, a single financial statement showing activity in an investment account was insufficient to support husband's testimony that no other contributions were made and growth was due solely to passive interest earnings). Nothing in the probate file, or elsewhere in the record, beyond husband's assertion, demonstrates the inherited money was distributed directly from the estate into husband's investment account. See id. Moreover, husband failed to present any documentation or records from the Edward Jones account demonstrating how the account increased in value from the deposited amounts to a value of $471,467.97 at the time the parties separated. See id. The trial court did note, however, "that the inheritance certainly enabled him to make the investment and that should and will be considered."

We conclude from the record that the trial court did not err in its finding that husband failed to present sufficient credible evidence to trace the funds from his inheritance to the

Edward Jones account, and thereby failed to rebut the presumption that the account was marital property. Because the account was marital property, the trial court did not err by including the husband's investment account in the marital estate for equitable distribution.

### 2. Marital Residence as Separate Property

Husband contends that the trial court erred by classifying the marital residence as wife's separate property. He argues that the trial court erred in not finding that his payment of the monthly mortgage and his personal labor in the form of repairs and improvements to the residence created a marital interest in his wife's separate property.

### a. Nonmonetary Contributions to Separate Property

Classification of property as marital or separate is a factual question, generally determined by whether the property was acquired before or during the marriage. "'[P]roperty acquired during the marriage is presumed to be marital and property acquired before marriage is presumed to be separate.'" Rahbaran v. Rahbaran, 26 Va. App. 195, 209, 494 S.E.2d 135, 142 (1997) (quoting Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993)); see Code § 20-107.3(A)(1), (2). Pursuant to Code § 20-107.3(A)(3), the trial court may classify property as part marital property and part separate property, or so-called "hybrid property," if the value of separate property increases during the marriage as a result of marital efforts. "The increase in value of separate property becomes marital if the expenditure of marital funds or a married party's personal efforts generated the increase in value." Moran v. Moran, 29 Va. App. 408, 412, 512 S.E.2d 834, 836 (1999); Code § 20-107.3(A)(3)(a) (requiring "that any such personal efforts must be significant and result in substantial appreciation of the separate property"). Husband argues that his personal efforts, including repairs and maintenance performed on the marital residence, were sufficient to create a marital interest in wife's separate property.

- 6 -

However, the use of personal effort to improve "a separate asset does not, without more, justify classifying an increase in value or appreciation of that asset as marital rather than separate property." Moran, 29 Va. App. at 412, 512 S.E.2d at 836 (citing Martin v. Martin, 27 Va. App. 745, 753-58, 501 S.E.2d 450, 454-56 (1998) (*en banc*)). Code § 20-107.3(A)(3)(a) places the burden on the non-owning spouse to prove that "(i) contributions of marital property or personal effort were made and (ii) the separate property increased in value." Here, wife acquired the marital residence before the parties married, and it remained solely titled to her throughout the marriage. It was presumptively her separate property. The burden was on husband to prove what part of the increase in value, if any, was due to his personal efforts. See Martin, 27 Va. App. at 751, 501 S.E.2d at 453. While the parties disputed the extent of husband's repairs, the trial court found that "no evidence was presented as to the value of the residence at the time of the marriage" and that no evidence was presented as to the increase in value of the residence as a result of his repairs and maintenance. See Moran, 29 Va. App. at 412, 512 S.E.2d at 836. In Moran, this Court found that "[t]he significant factor . . . is not the amount of effort or funds expended, but rather the fact that value was generated or added by the expenditure or significant personal effort." Id.

The trial court concluded that it could not determine to what extent husband's nonmonetary contributions increased the value of the residence, if at all. The trial court valued the residence at $129,000 based on the price ($129,500) for which it sold after the parties separated and prior to the entry of the divorce decree. The record is silent as to the value of the residence at the time it was originally purchased or at the time the parties married. When viewed in the light most favorable to wife, the prevailing party on this issue, the evidence fails to establish any increase in value to the marital residence attributable to husband's personal efforts. Without evidence of the increase in value of the residence resulting from husband's personal

efforts, the trial court did not err in finding that husband failed to prove that his nonmonetary contributions created any marital interest in the residence, wife's separate property.

b.  Monetary Contributions to Separate Property

Husband also contends that the trial court erred in not determining that there was a marital interest in the residence as a result of his monthly payment of the mortgage debt, thereby creating hybrid property in a portion of wife's separate property.  He argues that his use of marital assets to make the mortgage payments on the residence increased the property's value by reducing the debt, thereby entitling him to a marital interest in wife's separate property.  "The discharge of a debt secured by an asset that results in an increase in equity in the asset constitutes an 'increase in value.'"  Gilman, 32 Va. App. at 119, 526 S.E.2d at 710; see Code § 20-107.1(A)(1); Moran, 29 Va. App. at 413, 512 S.E.2d at 836.  "[T]o the extent that the marital funds reduced the principal of the mortgage, that amount is traceable from the separately acquired equity."  Moran, 29 Va. App. at 413, 512 S.E.2d at 836.

This Court has previously held that a non-owning spouse acquired value in separate property of an owning spouse, a residence that wife purchased prior to marriage, when marital funds were used to pay down the mortgage debt on that property.  See id.  In Moran, the husband proved that his payments reduced the mortgage principal when a portion of the equity in the marital residence could be traced to marital funds.  There, the husband established both the value of and the debt against the disputed property at the time he began using marital assets to pay the mortgage.  Id. at 414, 512 S.E.2d at 836.  He also established the equity to debt ratio at the time the parties separated and the payment from marital assets ended.  Id.  There, the evidence was sufficient for the trial court to determine the value of the hybrid or marital asset in the wife's separate property.  Id. at 414, 512 S.E.2d at 837.  The court concluded that the non-owning

spouse met his burden of proving part of the increase in value was due to his use of marital funds to pay down the debt on the owning spouse's separate property. Id. at 414, 512 S.E.2d at 836.

Here, the trial court concluded that husband failed to present sufficient evidence for it to determine the value of any marital interest in wife's separate property. The record shows that in 1974 wife borrowed $53,000, secured by the residence, before the parties married in 1976. She continued to make the mortgage payments of $410.89 until 1979, about the time the first child was born. Husband began making mortgage payments in 1979. He continued making mortgage payments until the parties separated in 1998, when the mortgage had been paid down to $945. However, the record contains no evidence of the equity value of the property at the time husband began using marital assets to pay the mortgage debt against the residence.

Furthermore, while husband provided the trial court with a written summary of his claimed mortgage payments for the calendar years 1990 through 1996, and for a portion of 1997, we note the absence of any documentary evidence supporting his assertion in the summary. The trial court was free to weigh this evidence, summarily presented and determine to what degree it should be credited, if at all. The trier of fact determines matters of witness credibility, and those determinations cannot be disturbed on appeal unless they are inherently incredible. See Wheeler v. Wheeler, 42 Va. App. 282, 295-96, 591 S.E.2d 698, 705 (2004).

In short, the record before us established the value of the mortgage debt at the time the parties separated and the value of the entire property based on its sale in 1999, two years after the parties separated. However, it fails to establish the value of the property when the parties married or the value of the mortgage debt at the time when husband began to use marital funds to reduce it. Without a starting point as to the value of the mortgage debt when marital funds were used to reduce it, the trial court could not determine the amount the property's equity was increased as a result of husband's contributions of marital property.

- 9 -

Additionally, viewing the evidence in the light most favorable to wife, we find that husband's summary of payments was not credited by the trial court and that he, therefore, failed to prove the amount by which payments of marital funds reduced the mortgage debt. When marital funds are paid into separate property, the marital funds are transmuted into separate property, except to the extent the non-owning spouse is able to show the increase in value to the separate property is traceable to marital funds. See Moran, 29 Va. App. at 413, 512 S.E.2d at 836. We will not reverse the trial court in "'equitable distribution cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so.'" Bowers v. Bowers, 4 Va. App. 610, 617-18, 359 S.E.2d 546, 550 (1987) (quoting In re Marriage of Smith, 448 N.E.2d 545, 550 (Ill. App. Ct. 1983)).

We conclude that the trial court did not err in holding that husband's evidence was not sufficient to show the increase in value of the marital residence, wife's separate property, as a result of his payment of the mortgage debt with marital funds, or through his personal efforts. While husband's evidence established that there was some marital value in wife's separate property, it failed to establish what that value was. Equitable distribution rests within the sound discretion of the trial court guided by Code § 20-107.3, and will not be reversed unless plainly wrong or without evidence to support it. Rahbaran, 26 Va. App. at 205, 494 S.E.2d at 139 (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)). We conclude that the trial court did not abuse its discretion in classifying the marital residence as wife's separate property, and in awarding to her the net proceeds from the sale of the property, after deducting the value of the loan she incurred to pay marital credit card debt and the cost of the sale of the property.

3. Distribution of Marital Assets

Finally, husband contends that the trial court erred in its distribution of the marital estate consistent with Code § 20-107.3(E).

"In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one." Shackelford v. Shackelford, 39 Va. App. 201, 210, 571 S.E.2d 917, 921 (2002) (citing Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987)). "The function of the [trial court] is to arrive at a fair and equitable monetary award based upon the equities and the rights and interests of each party in the marital property." Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987). Accordingly, we rely on the sound discretion of the trial court in determining the appropriate division or transfer of marital property and the amount of any monetary award. Gottlieb v. Gottlieb, 19 Va. App. 77, 93-94, 448 S.E.2d 666, 676 (1994) (citation omitted).

Husband contends that he should be awarded a greater share of the marital estate. He asserts that the marital estate should include a value of marital interest in wife's residence, and exclude his Edward Jones account as his separate property. However, we concluded, for the reasons stated above, that the record supports the trial court's classification of husband's Edward Jones account as marital property and the marital residence as wife's separate property. In fact, the monetary value of the distribution to wife was less than fifty percent of the marital assets.

Upon review of the record before us, we conclude that the trial court did not err in its equitable distribution of the marital estate. The record reflects that the trial court thoroughly examined all the evidence before it and that it properly considered all the statutory factors, in arriving at its equitable distribution award. Accordingly, we affirm.

III. WIFE'S APPEAL, RECORD NO. 0136-03-4

On cross-appeal, wife asserts that the trial court erred in failing to award her spousal support; in not reserving for her a right to future spousal support; in admitting into evidence the probate file of husband's father, and in admitting audiotapes of her arguments with husband for impeachment purposes. She also contends that the trial court erred in not awarding her attorney's fees.

A. SPOUSAL SUPPORT

"'Whether and how much spousal support will be awarded is a matter of discretion for the trial court.'" Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002) (quoting Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998)). "'In fixing the amount of the spousal support award, . . . the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. We will reverse the trial court only when its decision is plainly wrong or without evidence to support it.'" Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997) (quoting Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992)). "In awarding spousal support, the [trial court] must consider the relative needs and abilities of the parties. [The trial court] is guided by the . . . factors that are set forth in Code § 20-107.1." Joynes v. Payne, 36 Va. App. 401, 419, 551 S.E.2d 10, 19 (2001). Its findings "must have some foundation based on the evidence presented." Id.; see Northcutt, 39 Va. App. at 197, 571 S.E.2d at 914.

Wife argues that there was sufficient evidence to support her request for spousal support. We conclude that the trial court did not abuse its discretion in denying wife her spousal support.

From the evidence before it, the trial court concluded that the parties had been married for twenty-six years. The two children of the marriage attended college and lived independently outside of the home at the time of the divorce. Husband possessed an eighth grade education,

and worked as a handyman and independent contractor. Although the trial court found him to be the primary income producer during the marriage, the record reveals that husband provided wife a relatively small weekly allowance of $125 and later $150, from which she was required to meet all the household and family needs. The record also revealed that wife was the primary person responsible for maintaining the household and caring for the children. The trial court found that husband's health had declined with age, making it difficult for him to continue to perform hard labor at the same level he had performed during the marriage. Husband was sixty-five years old at the time of divorce, and suffered from cataracts and heart trouble. He had no health insurance at the time of the divorce.

In comparison, the trial court found that wife, age sixty at the time of the divorce, had a college education and was in better health than husband. She also worked during most of the marriage as a self-employed sign painter, as a temporary office employee, and as a part-time secretary at a community college. At the time of the divorce, she was employed full-time by the community college and had health insurance. The trial court concluded that wife's earning capacity was greater than husband's at the time the parties separated.

Considering the value of the property interests of the parties following its equitable distribution award and the circumstances of the parties, the trial court concluded that wife was not entitled to spousal support. It found "[s]he is younger, in better health, better educated and actually at this point makes more money than he does. I don't think she demonstrated a need for spousal support." Because there is credible evidence in the record to support the trial court's finding, we conclude that the trial court did not abuse its discretion in failing to award wife spousal support.

B. RESERVATION OF SPOUSAL SUPPORT

Code § 20-107.1(D) provides that the trial court may "[i]n addition to or in lieu of an award" of spousal support, reserve the right of a party to receive such support in the future. Wife contends that, as a matter of law, the trial court erred by not reserving to her a right to seek future spousal support. She concedes that she did not request a reservation of future support in her bill of complaint, nor did she present a specific request to the trial court. Instead, she argues on appeal that she made a specific request for spousal support and, in doing so, implicitly made a request for a reservation of spousal support. We disagree.

This Court has consistently held that "where there is no bar to the right of spousal support, it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support in the event of a change of circumstances,' even though, at the time of the decree, neither party needed support." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (quoting Bacon v. Bacon, 3 Va. App. 484, 491, 351 S.E.2d 37, 41 (1986)); see also Vissicchio v. Vissicchio, 27 Va. App. 240, 254, 498 S.E.2d 425, 432 (1998) (finding trial court erred by not considering the reservation of the right to spousal support, despite wife's failure to request a reservation at trial, because she requested permanent spousal support in her pleadings and attempted to reserve the right to future support by including a request for reservation in the draft of the final decree, which she prepared, but which the trial court deleted in its final decree). "The silence of a final decree as to spousal support has the effect of foreclosing a spouse from petitioning the trial court under Code § 20-109 for a future award in the light of changed circumstances." D'Auria v. D'Auria, 1 Va. App. 455, 462, 340 S.E.2d 164, 168 (1986). Therefore, "[i]t is reversible error for a court to fail to make such a reservation *when expressly requested* to do so by a party." Id. (emphasis added). "However, where the record shows no request for a reservation, the court is under no

- 14 -

obligation to insert such language *sua sponte*." Id. (citing Thomasson v. Thomasson, 225 Va. 394, 397 n.1, 302 S.E.2d 63, 65 n.1 (1983)). In D'Auria, this Court found no error in the trial court's omitting an express reservation of the right to future spousal support, "absent a request to do so or objection in refusing to do so." Id.

While wife requested an award of spousal support in her pleadings, she did not request a reservation of future support in her answer, in her cross-bill of complaint, in her objections during the proceedings before the trial court, or in her concluding argument at trial. Moreover, at trial, wife argued her need for current support, but never argued a need to reserve her right to future support. The trial court made no affirmative ruling reserving support. It simply ruled that wife would receive no support award. Wife only refers to the trial court's failure to reserve support in her exceptions attached to the trial court's final decree. Cf. Vissicchio, 27 Va. App. at 254, 498 S.E.2d at 432 (where wife included the request in her draft of the final decree presented to the trial court for consideration). Here, wife did not file any motion seeking to set aside the final decree, or requesting the trial court to reconsider its failure to reserve future support.

Our review of the record before us reflects that wife never requested a reservation of a right to future spousal support. "Fundamental rules of pleading provide that no court can base its judgment or decree upon a right which has not been pleaded and claimed." Boyd v. Boyd, 2 Va. App. 16, 18, 340 S.E.2d 578, 580 (1986) (citation omitted). Absent wife's specific request for a reservation of right to seek future spousal support, that question was never specifically before the trial court for determination. Accordingly, we find that the trial court did not abuse its discretion in not awarding wife a reservation of the right to future spousal support.

B. ADMISSIBILITY OF THE PROBATE FILE

Wife contends that the trial court erred in admitting into evidence the probate file of Ira Vincent Hoffman, Sr., husband's father. She argues that the trial court should have sustained her

motion *in limine* to exclude the probate file because she had not been provided a copy of the file, a public record, during discovery, and because she learned only a few days before trial that husband planned to use the file at trial. We find no abuse of discretion on the part of the trial court in admitting that evidence.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "[E]vidence that tends to prove a matter which is properly at issue in a case is generally admissible." Anderson, 29 Va. App. at 682, 514 S.E.2d at 374 (citation omitted).

Both parties, as well as the trial court, were aware of husband's inheritance, and its relevancy in determining whether his Edward Jones account was marital or separate property. The probate file was listed on husband's designation of trial exhibits filed fourteen days before trial. The parties stipulated as to the authenticity of the file and its admissibility in general. The trial court took judicial notice that it was a public document and, in admitting the file, found there was nothing in the file of which wife was unaware.

Moreover, we fail to see how the trial court's consideration of husband's deceased father's probate file in any manner prejudiced wife's claim that the Edward Jones account was marital property. Indeed, wife conceded that husband inherited a substantial sum from his father's estate.

C. ADMISSIBILITY OF AUDIOTAPES

Wife contends that the trial court erred when it admitted into evidence, solely for impeachment purposes, certain audiotapes of conversations between the parties. Wife objected to their admissibility because husband had not previously provided copies of the audiotapes in response to her request for discovery.

Assuming, without deciding, that husband improperly failed to provide required discovery, we note that the trial court has broad discretion under Rule 4:12 in determining sanctions for discovery violations.

> "Rule 4:12 gives the trial court broad discretion in determining what sanctions, if any, will be imposed upon a litigant who fails to respond timely to discovery." And a trial court's decision to admit evidence that is not timely disclosed, rather than impose the sanction of excluding it, will not be reversed unless the court's action amounts to an abuse of discretion.

Rappold v. Indiana Lumbermens Mutual Ins., 246 Va. 10, 14, 431 S.E.2d 302, 305 (1993) (quoting Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990)).

We conclude from the record in this case that the trial court did not abuse its discretion in admitting the audiotapes into evidence for purposes of impeachment. Spruill v. Commonwealth, 221 Va. 475, 485, 271 S.E.2d 419, 425 (1980) (citation omitted). Accordingly, we find no error.

## D. AWARD OF ATTORNEY'S FEES

### 1. At Trial

Wife contends that the trial court erred in not awarding her attorney fees, as well as certain costs that she incurred in representing wife in that court. She argues that because she was the prevailing party, she was entitled to the award of attorney's fees.

An award of attorney's fees is a matter within the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion. See Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). On appeal, we review the refusal of the award for "reasonableness under all the circumstances." Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (citing Joynes, 36 Va. App. at 429, 551 S.E.2d at 24). Here, both parties requested attorney's fees. Husband argued that he was entitled to attorney's fees because wife had failed to comply with the trial court's orders to fully answer his interrogatories. Wife argued that husband also failed to answer discovery and that she was compelled to file motions to

compel discovery that went unanswered. Counsel for both parties complained of having to travel to different courthouses within the circuit to attend hearings in the case because of scheduling tactics of opposing counsel. In denying attorney's fees to both parties, the trial court stated:

> I don't mean to be unkind and I hope this won't be more unkind then it needs to be but I think both counsel spent a great deal of time fighting each other, almost as much time as they spent fighting the case and I'm not able to say which one was worse than the other one. I think that both of them did not – ran up a bill more than it should have been by stonewalling the other one and not cooperating and neither party has a whole lot of money out of which to pay things. They'll have more money after today, I guess, but I don't think that either party should receive an award for attorney fees. I think each should pay their own fees.

From the record before us, we conclude that the trial court did not abuse its discretion in not awarding payment of opposing attorney's fees to either party.

## 2. On Appeal

Both husband and wife seek an award of attorney's fees on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

From our vantage point, we view the entirety of the proceedings, including questions and arguments presented on appeal and how they fit within the course of conduct in the trial court. Because we find that some of the issues presented in this appeal were matters of significant controversy and concern, we decline to award attorney's fees on appeal to either party.

## IV. CONCLUSION

Based on our review of the record, we find no error on the multiple questions husband and wife raise on appeal pertaining to equitable distribution, spousal support, the reservation of

spousal support, the admission of particular evidence, and attorney's fees.  For the reasons set forth above, we affirm the judgment of the trial court.

<u>Affirmed.</u>