COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


JAMES P. MASSA

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0843-03-4                          JUDGE WALTER S. FELTON, JR.
                                                               MARCH 30, 2004
SUSAN E. MASSA



FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie Alden, Judge

James Ray Cottrell (Martin A. Gannon; David H. Fletcher;
Christopher W. Schinstock; Kyle F. Bartol; Dana James Carlson;
Ryan M. Mattson; Gannon & Cottrell, P.C.; Hale, Hassan, Carlson &
Penn, P.L.C., on briefs), for appellant.

Alan B. Plevy (Kyung N. Dickerson; Smolen Plevy, P.C., on brief),
for appellee.


        James P. Massa (husband) appeals the trial court's decision awarding spousal support for

Susan E. Massa (wife).  He contends that the trial court erred in its award of spousal support by

failing to impute income to wife, and basing its award on wife's financial obligations that

included her monthly mortgage payments.  Husband also contends that the trial court erred in

awarding wife "permanent" support.  Both parties request an award of attorney's fees incident to

appeal.  Finding no error, we affirm.

                                          BACKGROUND

        On appeal, we view the evidence, and all reasonable inferences fairly deducible from it,

in the light most favorable to the prevailing party below.  Alphin v. Alphin, 15 Va. App. 395,

399, 424 S.E.2d 572, 574 (1992).  "Where, as here, the court hears the evidence *ore tenus*, its

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Id. (quoting Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

So viewed, the evidence establishes that the parties married on February 16, 1985 in Orlando, Florida. Four children were born of the marriage. At the time of the parties' divorce, the ages of the children ranged from four to fourteen years. On October 24, 2001, while both parties still resided in the marital residence, husband filed for divorce on the grounds of desertion by wife. The parties physically separated on November 19, 2001, when wife left the marital residence. She then filed a bill of complaint alleging constructive desertion by husband. The record reflects that subsequent to the parties' separation, husband took control of the marital assets and limited wife's access to the marital funds. On January 8, 2002, wife was awarded *pendente lite* spousal support in the amount of $15,000 monthly. Following the parties' agreement to waive their respective claims for a fault-based divorce, the trial court consolidated the actions on January 8, 2002.

The record reflects that husband was employed as a vice president with Cisco Systems, Inc., and was the sole income producer during most of the marriage. He has a Bachelor's of Science degree, and at the time of the proceedings the trial court concluded that he earned a monthly salary of approximately $26,600 and enjoyed other employer related financial incentives, including deferred compensation. He holds extensive stock options and a 401K account through his employer. He also owns several individual retirement and investment accounts.

Wife has a Bachelor's degree in English and a Master's of Social Work degree. Prior to having children, wife worked occasionally as a substitute teacher. After the birth of their first child in 1988, husband and wife agreed that she would remain in the home to care for their

children while he pursued his career in the work force.  Following the parties' separation, she continued to remain home to care for the children.  At the time of the divorce, the three oldest children attended school full time, while the youngest child attended pre-school for half a day.  At trial, husband presented expert testimony that employment opportunities were available to wife as a social worker in the Northern Virginia area.  The expert testified that wife could conservatively expect a salary of $32,000 a year if so employed.  Based on this evidence, husband requested that the trial court impute $32,000 annual income to wife in its spousal support determination.

On December 19, 2001, the parties agreed to share custody of their children on an alternating weekly basis.  That agreement provided that the children would live in the marital residence, known as the Noble Rock property, while husband and wife alternatively moved in and out of that residence.  This custodial arrangement continued until September 18, 2002.  At that time, the parties entered into a written agreement, known as the Interim Agreement, in which husband agreed to provide $700,000 to wife from the marital assets under his control to purchase a home in the same neighborhood as the Noble Rock residence.  The parties also agreed to re-title the Noble Rock residence solely in husband's name, while the new residence would be titled solely in wife's name.  The agreement also provided that the "lake property," titled solely in wife's name, would be jointly titled in both names.  On the same day the Interim Agreement was signed, the parties agreed to a permanent shared physical custody arrangement, under which each parent was to have physical custody of the children on alternating weeks.  This custody arrangement was incorporated in a Custody Consent Decree entered by the trial court on September 25, 2002.

Pursuant to the Interim Agreement, wife purchased a home, known as the Bunker Court residence, in the vicinity of the husband's Noble Rock residence, for $683,175.  Wife used a

portion of the $700,000 cash provided to her in the Interim Agreement, and a mortgage loan of $250,000 to purchase the home. Wife testified that she incurred the $250,000 mortgage when she became uncertain that husband would transfer all of the funds as the settlement date approached. After he transferred the full amount of funds, she used $125,000 to pay her attorney's fees. The trial court had previously ordered husband to pay wife's attorney's fees in that amount from marital funds under his control. When he failed to pay the attorney's fees by the court-imposed deadline, wife paid them from the funds she received from the Interim Agreement. Wife testified that she retained the remaining $125,000 in anticipation of future litigation expenses.

On March 14, 2003, the trial court entered a decree granting to wife a divorce on the grounds that the parties had lived separate and apart, without cohabitation or interruption, for a period in excess of one year. It also ordered the equitable distribution of the marital estate, spousal support and child support. As part of its equitable distribution of the marital estate, it awarded each party the separate residence titled in that person's name. It also awarded husband the lake property. It denied husband's request to impute income to wife. After expressly considering the factors in Code § 20-107.1(E), the trial court awarded wife "permanent" spousal support of $10,000 per month. It then ordered wife to pay husband $358 a month in child support. It approved the parties' child custody arrangement with each parent having the children on alternating weeks.

ANALYSIS

I. IMPUTATION OF INCOME

Husband contends that the trial court erred by failing to impute income to wife. He argues that the trial court ignored the evidence he presented as to her voluntary unemployment and that it erroneously relied on the historical parenting understanding between the parties over

- 4 -

the course of their marriage, which provided that wife would remain home to care for the children and out of the work force, while the children were in school, and while he progressed in his career.

In determining spousal support, a "court may impute income to a party who is voluntarily unemployed or underemployed." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994); see Stubblebine v. Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (*en banc*).

> Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children."

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (quoting Niemiec v. Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998)). The party seeking imputation of income has the burden of proving that the other party is voluntarily underemployed or is voluntarily foregoing gainful employment. Id.

At trial, husband presented expert testimony that there were social worker positions available in the area in which the parties lived and which, in his opinion, wife was qualified to fill. His expert, a career and vocational counselor, testified that he researched available positions for social workers in the Northern Virginia area on the Internet. He testified that his opinion of wife's employability for these positions was based on his understanding that wife was attractive, capable, in good health, and that she held a Master's degree in Social Work. His stated opinion was that wife could conservatively earn $32,000 annually, if employed full time as a social worker.

The record, however, reflects that wife had not worked outside the home during the previous fourteen years. It also reflects that she last worked as a substitute teacher, which she

did only occasionally, and which she ceased altogether with the birth of their first child. Despite having a Master's degree in Social Work, wife had never worked in that field. Husband's expert conceded that the available positions he located on the Internet required two to three years work experience. While the expert testified that he believed that wife's Master's degree was comparable to two years work experience, he also admitted that he had never "placed an individual" with a Master's in Social Work in a social work position.

Husband also contends that the evidence showed that child care was available to wife to permit her to be employed on a full time basis. He also argued that because wife had physical custody of the children only every other week, she would be able to devote full time to employment during the week when she did not have the children. He also argued that, because all of the children were in school, she could obtain child care for the brief periods between the end of the school day and the end of her employment day.

This Court has held that "[t]he unilateral decision to stay home and care for a child is not sufficient, standing alone, to establish that unemployment is involuntary, if child care services are available," or the children are in school. Brody v. Brody, 16 Va. App. 647, 649, 432 S.E.2d 20, 21 (1993).

Our review of the record reveals that the trial court considered the parties' disparate incomes and the history of their respective employment opportunities. It also considered the parties' standard of living established during their seventeen-year marriage, and especially the very high standard they enjoyed during the final years of the marriage. See Srinavasan v. Srinavasan, 10 Va. App. 728, 735, 936 S.E.2d 675, 679 (1990); Code § 20-107.1(E)(2). In denying husband's request to impute income to wife, the trial court stated:

> I have concluded from the evidence that the parties agreed [wife]
> would stay at home to take care of the kids. She had done that.
> And given the ages of the children, at least to some extent, she will
> continue to do that. Even if she were able to be working outside

the home, she would be limited in what she could at this point, though [the trial court has] considered her capacities, her prior education and training, as well as her express interest in future education and training.

It concluded that wife put aside her career employment goals, consistent with her educational background, in order to further the parties' understanding that she should remain home to raise the children, while permitting husband's career to flourish.

Husband argues that the trial court erroneously relied on the historical parenting agreement between the parties, which provided that wife would remain home and care for the children while they were still in school. Code § 20-107.1(E)(11) requires the trial court to consider decisions "regarding employment, career, economics, education and parenting arrangements made by the parties during the marriage and their effect on present and future earning potential, including the length of time one or both of the parties have been absent from the job market." Pursuant to the statute, a trial court may appropriately consider the parties' agreement that wife stay home to care for the children, "insofar as it impacted [wife's] ability to earn." Joynes v. Payne, 36 Va. App. 401, 422, 551 S.E.2d 10, 20 (2001); see Code § 20-107.1(E)(11). As noted above, the trial court found that it was important, under the circumstances presented to it, that wife be available to care for the parties' children. Each of the children had attended counseling, and the youngest child suffered from learning disabilities that required additional attention. It reasonably concluded that the parties' agreement that wife not work outside the home for fourteen years negatively impacted her earning capacity and career opportunities at the time of the divorce.

"The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." Blackburn, 30 Va. App. at 102, 515 S.E.2d at 784 (citing Saleem v. Saleem, 26

Va. App. 384, 393, 494 S.E.2d 883, 887 (1998)).  Accordingly, we conclude that the trial court did not abuse its discretion in refusing to impute income to wife.

## II.  THE INTERIM AGREEMENT

Husband also contends that the trial court erred in basing its spousal support award, in part, on wife's mortgage expense, arising from her purchase of a residence pursuant to the interim agreement between the parties.  He argues that the trial court's award of spousal support violated the terms of the parties' interim agreement and that Code § 20-109(C) prohibits the trial court ordering payment of support or maintenance not in accord with a previously signed contract or stipulation by the parties.

Generally, Code § 20-107.1 governs the trial court's determination whether, and to what extent, spousal support should be awarded.  Code § 20-109(C) provides that in the event that the parties contract or stipulate to the amount of spousal support, and that agreement is properly filed, "no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract."  See White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999) (finding that the statute "inhibits the power of the court to award or consider modification of the decree to the extent that spousal support and maintenance are provided for in the incorporated agreement of the parties").

Here, the interim agreement did not address the issue of spousal support.  It dealt solely with the transfer by husband to wife of marital funds to enable wife to purchase a residence in the same neighborhood as husband's home, and with the titling of husband and wife's separate residential properties and the lake property.  The record further reflects that the parties understood that wife might use less than the total amount of the marital funds provided to purchase the separate residence.  The agreement specifically provided that "[a]ny portion of the funds not applied to the acquisition of her residence shall be deemed to remain in wife's

possession." Simply stated, the interim agreement did not govern spousal support. It provided only for the purchase of the additional residence for wife, the transfer of title to the marital residence to husband, and the transfer of title to the lake property from wife alone to the parties jointly.

Additionally, the interim agreement required the transfer of the funds and titles be made "without prejudice to the parties in making any claim with respect to the equitable distribution of the parties' total marital estate." The interim agreement provided that it "shall not be deemed to be a full and final settlement of all matters and issues arising from their marital estate." Accordingly, we conclude that the trial court's award of spousal support did not violate the terms of the parties' interim agreement.

Finally, husband argues that the trial court failed to give consideration to the parties' interim agreement and its equitable distribution award in awarding spousal support to wife. Code § 20-107.1(E)(8) requires that the trial court consider the respective interests of the parties in the marital property when it makes any award of spousal support. Here, the record reflects that the trial court considered all of the factors listed in Code § 20-107.1(E), including the equitable distribution of the marital property; the length of the marriage; the relative standard of living created and enjoyed as a result of the marriage partnership; the earning capacities of the parties; the monetary and nonmonetary contributions of each party to the well-being of the family; the decisions regarding employment, career, education, and parenting arrangements made by the parties during the marriage and their effect on present and future earning potential, including the length of time wife had been absent from the job market, and the extent to which wife contributed to the husband's attainment of his successful position.

On appeal, we will not disturb the trial court's award of spousal support, unless there has been a clear abuse of discretion, and will reverse the decision of the trial court only when it is

- 9 -

plainly wrong or without evidence to support it. <u>Moreno v. Moreno</u>, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997) (citation omitted). We conclude from the record before us that the trial court did not abuse its discretion in ordering husband to pay $10,000 in monthly spousal support.

III. PERMANENT SUPPORT

In its March 14, 2003 decree awarding spousal support, the trial court ordered that "said support shall be permanent and subject to the provision of § 20-109 of the Code of Virginia, shall terminate upon the death of either party or the remarriage of [wife], and that [she] shall have an affirmative duty to notify [husband] immediately of her remarriage."

Husband contends that the trial court erred in awarding wife "permanent" spousal support rather then ordering spousal support "for an undefined duration." He argues that the trial court's authority to order spousal support was limited to either a defined duration, or to periodic payments for an undefined duration, pursuant to Code § 20-107.1(C). He further argues that the trial court's award of "permanent" spousal support foreclosed its ability to modify the award in a change of circumstances, or to terminate the award in case of the parties' deaths, wife's remarriage, or her habitual cohabitation. <u>See</u> Code § 20-109(A).

Based on our review of the record, we find that the trial court did not err in fashioning the support award. <u>See</u> Code § 20-107.1. It specifically included in its decree that wife's "permanent" spousal support would be subject to the statutory restrictions in Code § 20-109. Moreover, Code § 20-107.1(B) provides that "[a]ny maintenance and support shall be subject to the provisions of Code § 20-109." Code § 20-109(A) specifically permits "[u]pon the petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance . . . as the circumstances may make proper." This Court has consistently held that an award for "permanent support" may be modified in the event of a

change in circumstances between the parties, unless they stipulate or contract otherwise.

Dickson v. Dickson, 23 Va. App. 73, 474 S.E.2d 165 (1996); Dukelow v. Dukelow, 2 Va. App.

21, 341 S.E.2d 208 (1986). Accordingly, we affirm the trial court's award of "permanent"

spousal support.

## IV. ATTORNEY'S FEES ON APPEAL

Both husband and wife seek an award of attorney's fees on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

From our vantage point, we view the entirety of the proceedings, including questions and

arguments presented on appeal and how they fit within the course of conduct in the trial court.

Reviewing the record as a whole, we conclude that each party should be responsible for their

respective attorney's fees incurred on appeal.

## CONCLUSION

For the above reasons, we find that the trial court did not err in awarding spousal support

to wife or in the amount of its award; that the trial court did not err in denying husband's request

to impute income to wife for the purposes of determining spousal support; that the trial court did

not violate the terms of the parties' interim agreement by considering wife's monthly mortgage

payment in her request for spousal support; and that the trial court did not err in awarding wife

"permanent" spousal support. Finally, we decline the award of attorney's fees on appeal to

either party. Accordingly, we affirm the judgment of the trial court.

Affirmed.