COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


DARRELL A. WHEELER
                                                    OPINION BY
v.       Record No. 0034-03-4            JUDGE ELIZABETH A. McCLANAHAN
                                                  JANUARY 20, 2004
CATHLEEN N. WHEELER


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                         R. Terrence Ney, Judge

        James A. Watson, II (Richard J. Colten; Colten, Cummins,
        Watson & Vincent P.C., on briefs), for appellant.

        Richard F. Gibbons, Jr. (Cathleen N. Wheeler, *pro se*, on brief),
        for appellee.


        Darrell A. Wheeler (father) appeals from a decision of the circuit court permitting the

out-of-state relocation of his children with Cathleen N. Wheeler (mother).  Father contends that

the trial court erred in:  (1) finding that relocation was in the children's best interests, would not

substantially impair their relationship with father, and would improve their economic

circumstances; (2) allowing relocation out-of-state rather than requiring it locally; and, (3) failing

to properly consider the testimony of a witness.  For the reasons that follow, we affirm the trial

court.

                              I.  BACKGROUND

        "We review the evidence in the light most favorable to mother, the party prevailing

below, and grant her all reasonable inferences fairly deducible from the evidence viewed in that

light."  Goodhand v. Kildoo, 37 Va. App. 591, 595, 560 S.E.2d 463, 464 (2002).  Mother and

father were married in 1988.  Three children were born of the marriage, now ages eleven, seven

and four. Because father was in the military, the family lived in numerous locations in Europe and the United States. Due to his job, father also traveled extensively, resulting in mother and children staying with family in Connecticut for several-month stretches at a time.

In April 1996, father took an assignment in Northern Virginia and moved the family to a house in Fairfax. Neither mother nor father had any family or friends in the area. In June 1998, one month after mother became pregnant with their youngest child, the family relocated to another home in Fairfax.

In August 1998, father left the family home and separated from wife. The parties entered into a Property Settlement Agreement that provided for joint custody of the children. Physical custody was placed with mother, while father had visitation on alternate weekends, a mid-week evening, holidays, two weeks in the summer, and other times as the parties agreed. The agreement also provided that mother and father would discuss, in advance, any material decision relating to the children's health, education, religious training and social welfare. Father agreed to pay monthly child support. He also agreed to pay monthly spousal support, which by agreement would be gradually reduced starting in 2005 and extinguished in 2008. According to the agreement, the spousal support is non-modifiable and remarriage is excluded as a basis for its termination. Father contends this provision was made to enable mother to continue to reside in Northern Virginia and stay home with the children. A final decree of divorce was entered on June 1, 2000.

Mother and the three children remained in the family's home until June 2000. When mother was unable to afford the rent, they moved to a townhouse in Burke, Virginia. Because of the generosity of the property manager, mother initially paid reduced rent.

In September 2000, father remarried. At the time of the hearing, he and new wife had one child age twenty months, and were expecting a second child. Father and new family live in a small, single-family house in Arlington, Virginia.

After the divorce, mother experienced deteriorating financial circumstances. Her rent steadily increased, and she drew on her savings in order to adequately cover living expenses for the children. By the time of the hearing, her savings were depleted. She also depended on charity and gifts from family and friends to cover the family's expenses. At one point, for approximately a year, she worked part-time outside the home, making $15 per hour. After determining that the financial benefit was negligible and insufficient, mother ceased making an effort to seek outside employment. Because of the rent increases, by June 2002, mother and children were again required to look for another suitable residence.

Toward the end of 2000, mother began a relationship with Wade Luther. Luther moved from Orlando, Florida to Northern Virginia in 1995, to attend law school. He has two children from a previous marriage, ages eleven and nine. In March 2002, Luther proposed marriage to mother contingent on her moving to Florida with him. Mother initially told Luther she could not move to Florida because she wanted to keep the children near their father. However, once she evaluated what she could afford in the Northern Virginia housing market and the economic condition of the family, she decided that it was in the best interests of the children to relocate to Florida with Luther.

In May 2002, mother informed father that she and the children would be moving to Florida with Luther. Father objected to the move and filed a petition to enjoin out-of-state relocation on July 3, 2002.

According to witnesses at an *ore tenus* hearing, the children are happy, well-adjusted, in good health and perform well academically. Both parties testified that the other is an excellent

parent and that each has a close, warm, loving and caring relationship with the children. Several witnesses testified that both mother and father are active, involved parents. Father testified that if the children were permitted to relocate with mother, he would not be able to have the spontaneous contact he enjoys with the children in Northern Virginia. One of father's witnesses, Dr. Alan McFarland, a licensed clinical psychologist, opined that physical proximity of a parent to a child is essential to the fundamental ambitions of the co-parenting model. Father also presented a real estate agent who introduced real estate listings for properties in Northern Virginia that were possibly in mother's price range. Mother countered with exhibits of real estate listings that showed properties in Florida that were substantially better than those available in Northern Virginia and that she might be able to afford.

At the conclusion of the hearing, the chancellor found that there was a material change in circumstances, specifically as to the economic condition of the custodial parent. The chancellor then considered the best interests of the children, separately addressed each of the factors in Code § 20-124.3, and found the relocation to be in the best interests of the children. He also found, because of father's bond with the children, the absence of physical proximity would not change the father's relationship with them, though it might be an inconvenience. He stated that it was "not in the best interest of the children to retain the status quo because the status quo [was] changing and [would] continue to change because of the deteriorating economic situation." On December 17, 2002, the trial court entered an order permitting relocation of the children.

## II. ANALYSIS

### A. RELOCATION

#### 1. STANDARD OF REVIEW

When a court hears evidence at an *ore tenus* hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support

it.  Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998).  A court may "from time to time . . . revise and alter [a] decree concerning the care, custody and maintenance of . . . children and make a new decree concerning the same, as circumstances of the parents and the benefit of the children may require."  Code § 20-108; Bostick v. Bostick-Bennett, 23 Va. App. 527, 534-35, 478 S.E.2d 319, 323 (1996).  A court may forbid a custodial parent from removing children from the state without the court's permission, or it may permit the children to be removed from the state.  Scinaldi v. Scinaldi, 2 Va. App. 571, 573, 347 S.E.2d 149, 150 (1986).  In determining whether to modify a decree giving a custodial parent permission to remove children from the state, the court must find:  (1) a material change in circumstances since the prior decree; and, (2) that relocation would be in the children's best interests.  Bostick, 23 Va. App. at 535, 478 S.E.2d at 323; see also Code §§ 20-108 and 20-124.3.  Additionally, "the added difficulty in maintaining a beneficial relationship between a child and a non-custodial parent should not be the sole basis for restricting a custodial parent's residence except where the benefits of the relationship cannot be substantially maintained if the child is moved away from the non-custodial parent."  Scinaldi, 2 Va. App. at 575, 347 S.E.2d at 151.[1]

### 2.  CHANGED CIRCUMSTANCES

Before evaluating whether to modify a decree, the court must find a material change in circumstances.  See Hughes v. Gentry, 18 Va. App. 318, 321, 443 S.E.2d 448, 450 (1994); Hiner v. Hadeed, 15 Va. App. 575, 579-80, 425 S.E.2d 811, 814 (1993) ("In the absence of a material change in circumstance, reconsideration . . . would be barred by principles of res judicata.");

---

[1] Whether mother might have been able to find and afford a suitable place to live in Northern Virginia, such as Prince William County or Manassas, as posed by father's Question Presented 5, is not a consideration that is required.  What is required is whether there has been a material change in circumstances and whether the relocation is in the best interests of the children.  The court must also look at whether the relationship with the non-custodial parent will be substantially impaired.  Goodhand, 37 Va. App. at 602, 560 S.E.2d at 468; see also Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002).

Turner v. Turner, 3 Va. App. 31, 35, 348 S.E.2d 21, 23 (1986).  Accordingly, as a threshold matter, the trial court properly found that there had been a material change in circumstances such that the court could modify a decree giving the custodial parent permission to remove children from the state.  "'Changed circumstances' is a broad concept and incorporates a broad range of positive and negative developments in the lives of the children."  Parish v. Spaulding, 26 Va. App. 566, 573, 496 S.E.2d 91, 94 (1998) (quoting Keel v. Keel, 225 Va. 606, 611-12, 303 S.E.2d 917, 921 (1983)), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999).  "Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence."  Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (citation omitted).  The trial court found that "plainly" there had been a change in circumstances since the initial order was entered in the case, specifically, the change in the mother's economic circumstances.

### 3.  BEST INTERESTS OF THE CHILDREN

Once the court determines that there has been a material change in circumstances, it must evaluate whether relocation would be in the best interests of the children.  "Such a decision is a matter of discretion to be exercised by the court, and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed."  Bostick, 23 Va. App. at 533, 478 S.E.2d at 322.  "It is well settled in Virginia that the best interests of the children controls the issue of a change of custody or the issue of a custodial parent moving the children to another state."  Simmons v. Simmons, 1 Va. App. 358, 362, 339 S.E.2d 198, 200 (1986); see also Stockdale v. Stockdale, 33 Va. App. 179, 183, 532 S.E.2d 332, 335 (2000); Bostick, 23 Va. App. at 535, 478 S.E.2d at 323.  "The court may consider a benefit to the parent from relocation only if the move

independently benefits the children." Cloutier v. Queen, 35 Va. App. 413, 430, 545 S.E.2d 574, 583 (2001).[2]

In Sullivan v. Knick, 38 Va. App. 773, 568 S.E.2d 430 (2002), this Court denied a custodial parent permission to remove a child from the state, finding that the evidence in the case established that the proposed relocation only benefited the mother and was not in the best interests of the children. The Court found that a decision to disturb the "status quo" was plainly wrong and unsupported by the evidence. In the case at bar, the chancellor found that the relocation not only benefited mother, but was "in fact beneficial and in the best interests of the children." He stated that relocation from the children's current home was going to happen regardless and that relocation within Northern Virginia would be "of no benefit whatsoever." The court found that there was no "status quo" because of the deteriorating economic situation of the family. In this case, unlike in the Sullivan case, the court found that the proposed relocation did not solely reflect the preferences of the custodial parent, but was clearly beneficial to the children. The most distinguishing thing about Sullivan is that, during the relocation hearing, the mother's new husband admitted that the "'prime motivation' for pursuing the move was to locate nearer the South Carolina residence of his eight-year-old son from a prior marriage, thereby affording him 'more involve[ment]' in the child's life." Id. at 778, 568 S.E.2d at 433. The requested relocation, therefore, "was prompted solely by mother's marriage" and her new husband's "desire to pursue employment and residence in South Carolina to be nearer his child by a prior marriage . . . ." Id. at 784, 568 S.E.2d at 435.

---

[2] Father contends that the trial court gave priority to the convenience and needs of the mother instead of giving primary consideration to the welfare of the children. This is simply not the case. The chancellor's oral ruling at the hearing plainly gave paramount consideration to the best interests of the children by evaluating the factors of Code § 20-124.3.

A trial court may consider a benefit to the custodial parent from relocation so long as the "move independently benefits the children." Cloutier, 35 Va. App. at 430, 545 S.E.2d at 583. To be sure, as we acknowledged in Sullivan, "advantages accruing to a custodial parent from relocation oftentimes inure to the benefit of a child" and should be taken into account. Sullivan, 38 Va. App. at 784, 568 S.E.2d at 436.

Father argues that the court's conclusion that mother and children will be in a better economic situation upon a move to Florida is based on speculation and not supported by any evidence in the record. He states that as of the date of hearing, mother was not married to Luther, neither she nor Luther owned a home in Florida, and that Luther had no employment in Florida. In Carpenter v. Carpenter, 220 Va. 299, 257 S.E.2d 845 (1979), an unemployed custodial parent sought to move to New York with her children in order to seek employment opportunities. The trial court enjoined her from moving, finding that the move was not in the best interests of the children. That court found that both parents were fit and enjoyed good relationships with the children, that the children were developing well and that the mother's prospects for employment were speculative and "fanciful." The Supreme Court of Virginia affirmed the decision because there was evidence to support the trial court's finding that the best interests of the children would not be served by the move.

In the case at bar, as in Carpenter, the chancellor found that both parents were fit and enjoyed good relationships with the children and that the children were developing well. However, unlike in Carpenter, the chancellor found that it was in the children's best interests to move to Florida. The court found that relocation to Florida would provide stability for the children, unlike in Northern Virginia. He found that the children would have a support system, which they do not have in Northern Virginia. And, he found that the children's economic situation would improve; better housing at more affordable prices would be available in Florida,

unlike in Northern Virginia. Also, unlike in Carpenter, mother was not seeking job opportunities out-of-state. She stayed at home with the children while she was living in Northern Virginia, and would be able to stay at home with the children upon a move to Florida. The court stated that the children's ability to stay with the primary caregiver, "is of great benefit to them as well. They will have a stay-at-home mother. That status would be in jeopardy otherwise. She simply cannot do so in Northern Virginia." The court weighed the benefits to the children of staying in Northern Virginia against allowing a move to Florida. It found that the situation in Northern Virginia would have a negative impact on the children while the move to Florida would have a positive impact. This Court cannot say that such a finding is plainly wrong or without evidence to support it.

We turn now to reviewing whether, in fact, the evidence supports the trial court's finding that the relocation was in the best interests of the children. In determining the best interests of the children, the court must look at the factors provided by Code § 20-124.3.[3] Cloutier, 35

---

[3] Code § 20-124.3 provides:

> In determining best interests of a child for purposes of determining custody . . . the court shall consider the following:
>
> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
>
> 2. The age and physical and mental condition of each parent;
>
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
>
> 4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;
>
> 5. The role which each parent has played and will play in the future, in the upbringing and care of the child;

Va. App. at 427, 545 S.E.2d at 581; see also Goodhand, 37 Va. App. at 600, 560 S.E.2d at 467;

Stockdale, 33 Va. App. at 181-82, 532 S.E.2d at 334. In the instant case, the chancellor stated

that he considered the testimony of all the witnesses and exhibits in considering the factors. He

then communicated his specific findings on each factor. At the conclusion of the hearing, he

reiterated his findings, stating:

> Simply put it is the conclusion of the Court that the best interest of
> the children will be served by permitting their relocation with their
> mother. Their economic circumstances will improve. They will
> have financial security. They will have a suitable and stable home
> environment. They will not be living on the edge.
>
> Secondly, they will remain with their primary caregiver. This is of
> great benefit to them as well. They will have a stay-at-home
> mother. That status would be in jeopardy otherwise. She simply
> cannot do so in Northern Virginia.
>
> They will enjoy a support system in Florida through the Mother
> which they do not have available here, both with their maternal

---

6. The propensity of each parent to actively support the child's
contact and relationship with the other parent, including whether a
parent has unreasonably denied the other parent access to or
visitation with the child;

7. The relative willingness and demonstrated ability of each parent
to maintain a close and continuing relationship with the child, and
the ability of each parent to cooperate in and resolve disputes
regarding matters affecting the child;

8. The reasonable preference of the child, if the court deems the
child to be of reasonable intelligence, understanding, age and
experience to express such a preference;

9. Any history of family abuse as that term is defined in
§ 16.1-228; and

10. Such other factors as the court deems necessary and proper to
the determination.

The judge shall communicate to the parties the basis of the
decision either orally or in writing.

> grandmother relocating there and with the step-siblings that will become part of the family, the nuclear family because of marriage to Mr. Luther.
>
> Thirdly, . . . it is not in the best interest of these children to retain the status quo because the status quo is changing and will continue to change because of the deteriorating economic situation. There is not going to be a status quo. Put differently, relocation is going to occur if not to Florida then to Prince William to Manassas Park or elsewhere. And this is not going to be, given the evidence, which has been presented to the Court, beneficial for these children. And that relocation to Manassas Park, Prince William, for example, will impact on the visitation enjoyed by Mr. Wheeler; it will make it more difficult. That will be a negative for these children. It will be of no benefit whatsoever to the contrary.
>
> The Florida relocation on the other hand for the reasons stated is in fact beneficial and in the best interests of the children.

Clearly then, the court weighed and considered each of the statutory factors, and concluded from credible evidence that the economic circumstances and living situation of the children would improve and that relocation to Florida was in the best interests of the children. Accordingly, we find that the court did not err in finding that it was in the best interests of the children to relocate.

### 4. SUBSTANTIAL MAINTENANCE OF RELATIONSHIP

Father contends the trial court erred in finding that the relocation will not substantially impair the relationship between father and the children, even through the "great weight" of the evidence supported the conclusion that father is an outstanding parent, closely involved in the children's lives. The evidence clearly showed that father is an exceptional parent. However, the issue is not whether father is devoted to his children, but whether, instead, the benefit of the relationship can continue upon the children's relocation to Florida. See Scinaldi, 2 Va. App. at 575, 347 S.E.2d at 151. The question the court must answer is whether the benefit is available to the children only if they live in close proximity to the non-custodial parent. Id.

In this case, the trial court found that father has a "close, loving relationship with his children. He is bonded to these children. He is bound to these children. And this bond is not

- 11 -

going to be broken, indeed it probably will not suffer although it [may be] inconvenienced should the children relocate." While the beneficial relationship between the children and the parent must not be placed at risk to the disadvantage of the children, Sullivan, 38 Va. App. at 783, 568 S.E.2d at 435, the trial court found that the children are not going to be placed at risk of losing the beneficial relationship they enjoy with their father by moving to Florida. This conclusion was not plainly wrong or without evidence to support it. Accordingly, we find that the trial court properly considered the issue and that the evidence supports the trial court's finding that father's relationship with the children will not be substantially impaired by the relocation.

## B. TESTIMONY OF DR. McFARLAND

Father complains that the trial court erred in failing to give credit to the unrebutted testimony of Dr. Alan McFarland. Dr. McFarland testified that "physical proximity is essential to the fundamental ambitions of a co-parenting model." He further said, "It certainly serves them better."

In Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986), we stated, "The trier of fact must determine the weight of the testimony and the credibility of the witnesses, but it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record." "The evidence of an expert witness should be given the same consideration as is given that of any other witness, considering his opportunity for knowledge of the subject and subject matter as to which he testifies, his appearance, conduct, and demeanor on the stand." McLane v. Commonwealth, 202 Va. 197, 206, 116 S.E.2d 274, 281 (1960). However, the fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert. Id. at 205-06, 116 S.E.2d at 281.

In this case, the trial court did not reject the testimony of Dr. McFarland. The chancellor stated that nothing in the doctor's expert testimony "suggested that the absence of physical proximity would change the Father's relationship, the relationship of love between the parent and child as a result of a greater distance between them." Therefore, the chancellor clearly considered the testimony of Dr. McFarland and weighed the testimony accordingly. For that reason, we find no error on the part of the trial court.

## III. CONCLUSION

We hold that the trial court considered the required factors when determining whether to permit relocation: material change of circumstances, best interests of the children and substantial maintenance of the children's relationship with the non-custodial parent. The court found that there was a material change in circumstances warranting the re-evaluation of the initial custody order. It gave paramount importance to the best interests of the children, weighed all the factors as required by the applicable statutes, and found that relocation was in the best interests of the children. The court also weighed whether relocation would substantially impair the relationship between the children and the non-custodial parent. It found that the strength of the bond between father and the children was so strong that while distance may cause some inconvenience, their relationship could be substantially maintained. Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>