COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Coleman


SCOTT E. ZINN

                                                        MEMORANDUM OPINION[*]
v.       Record No. 1331-06-3                                PER CURIAM
                                                         DECEMBER 28, 2006
MICHELLE L. ZINN


              FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                            Thomas H. Wood, Judge

            (Nancy A. Frank; Nancy A. Frank, P.C., on brief), for appellant.

            (Linda Schorsch Jones; Poindexter & Schorsch, P.C., on brief), for
            appellee.


        Scott Zinn appeals a trial court order modifying a visitation schedule with his son.  He

presents three questions on appeal, all of which challenge whether the evidence proved a

material change in circumstances to warrant modification of an order of visitation.  Upon

reviewing the record and the briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

                                    BACKGROUND

        On appeal, we view the evidence and all reasonable inferences in the light most favorable

to the appellee as the prevailing party below.  See McGuire v. McGuire, 10 Va. App. 248, 250,

391 S.E.2d 344, 346 (1990).  So viewed, the evidence proved that the parties were married on

June 22, 1998, and had one child born on February 3, 2000.  On March 19, 2004, mother filed in

the trial court a bill of complaint for divorce, requesting she be awarded custody of their son and

for such other relief as equity may require.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The parties appeared before the juvenile court on August 31, 2004, and advised the juvenile court judge "that an agreement had been reached with respect to visitation of the parties' infant child." The juvenile court judge signed the parties' "Visitation Consent Order," which contained the following terms:

> [Father] shall visit with [the child] on Mondays overnight, every other Wednesday overnight, Thursdays overnight, and Saturdays overnight, with the times of visitation to be agreed upon between the parties, and . . . the parties shall share visitation with the infant child equally during all holiday periods.

On that same date, the parties also presented to the juvenile court a document entitled "Custody Consent Order." The juvenile court judge signed and entered the order, which contained the following terms:

> [L]egal custody of [the child] be and the same hereby is awarded jointly to [mother] and [father], with primary physical custody awarded to the [mother], Michelle L. Zinn.

At the time of the 2004 hearing, the child was four years old.

On January 10, 2006, the parties appeared before the trial court on mother's bill of complaint for a hearing on the issues of custody, visitation, and child support. At the outset, the parties indicated the issues only concerned whether there was a change in circumstances. Father testified that pursuant to the parties' prior consent order, the child spent the night with him on Monday nights, Thursday nights, Saturday nights, and every other Wednesday night. He also averred that when the prior order was entered, the child was in preschool, which he attended "half-days three days per week." At the time of the hearing in the circuit court, the child was attending kindergarten five days per week from 8:00 a.m. until 3:00 p.m. In father's two previous jobs, he worked from 6:30 a.m. or 7:00 a.m until 3:00 p.m. or 3:30 p.m., respectively. The father testified his new job required him to work four ten-hour days per week, from 7:00 a.m. until 5:30 p.m. from Monday through Thursday. When the child spends the night with

father, who lives in Stuart's Draft, father returns the child to the child's maternal grandparents in Verona, where mother lives, around 6:30 a.m. The child then goes to school from that location. The maternal grandparents supervise the child when he is not in school and when mother and father are at work. When asked by mother's attorney if he wants to keep things the way they are, father testified:

> I want to share our time with [the child]; whether we make modifications to the current order that we have where we don't have to switch our days so often with him, that is fine, but I would like to keep it where he sees me and sees [the mother] on a consistent basis.

Mother testified that when the child spends the night with father, he arrives at her residence "in his pajamas and for the most part asleep." Mother testified that the child has been acting out at kindergarten, has been disturbing others on a consistent basis, and is regularly placed in "time out." She also related that the child is tired in the evenings after he spends the previous night with father, and he is asleep sometimes when she gets home from work at 5:30 p.m. Mother said she is unable to wake him sometimes and "[t]here are nights when he won't even wake up to have dinner." Mother also related an incident when father insisted on picking him up for visitation despite the child's illness. She said she had to contact her attorney to prevent father from transporting the child while he was ill.

Although the child has had homework every night since he began kindergarten in the fall of 2005, father said he only learned about that homework the day before the January 2006 hearing. According to mother, father was present at the initial kindergarten orientation when the teacher explained the children would have homework daily.

When asked what she would like the trial court to do, mother testified as follows:

> Give [the child] a little bit of consistency. His schedule is not consistent and it is difficult for him. Things get lost in transport; we have to change clothes back and forth; toys get left at

- 3 -

his dad's, and he is at my house and he wants them or vice versa. It is very chaotic and it very difficult.

It is not only difficult for [the child] but it is difficult for [father] and [me] as well. We have both come across times where we have forgotten who is supposed to have him on Wednesday because we have changed for, you know, family visits or other things to go on with work or whatever, so it is very chaotic and I would like to see a little more consistency.

Mother testified it would be better if the child stayed at one place during the weekdays when school is in session. She said her residence was better because she is "the one that communicates with [the child's] school" and teacher and she makes sure he completes his homework. She testified she has a flexible work schedule and can leave work during the day to visit the school. Mother was amenable to liberal sharing and visitation when the child is not in school.

After hearing evidence and argument, the trial court awarded mother primary physical custody of the child and ruled that the child will remain with mother on weeknights during the school year. It awarded father "every other weekend visitation . . . plus a night in the off week" during the school year. The trial court also directed the parties to allow for "extended visitation in the summer."

## DISCUSSION

The father's three questions on appeal challenge the sufficiency of the evidence to support the trial court's decision to modify the visitation order.

"When a trial court has entered a final custody and visitation order, it cannot be modified absent (i) a showing of changed circumstances under Code § 20-108 and (ii) proof that the child's best interests under Code § 20-124.3 will be served by the modification." Petry v. Petry, 41 Va. App. 782, 789, 589 S.E.2d 458, 462 (2003).

"'Changed circumstances' is a broad concept and incorporates a broad range of positive and negative developments in the lives of

- 4 -

the children." Parish v. Spaulding, 26 Va. App. 566, 573, 496 S.E.2d 91, 94 (1998) (quoting Keel v. Keel, 225 Va. 606, 611-12, 303 S.E.2d 917, 921 (1983)), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999). "Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (citation omitted).

Wheeler v. Wheeler, 42 Va. App. 282, 289, 591 S.E.2d 698, 702 (2004).

Before modifying the visitation decree, the trial court found that a material change in circumstances had occurred when it found "what may have worked for a child in preschool" going three days a week for one-half a day "is not going to work very well" when the child attends regular school, as he does now, and "it is only going to get worse all of the time." In other words, proof that the child had reached school age and attended school for a full day, five days a week, constituted a material change in circumstances justifying the trial court with proceeding to determine what modifications of the visitation schedule would be in the child's best interest.

As to the best interests of the child, the trial court found "[i]t is not good for this child to be changing so much as he is changing. He needs to have a home. He needs to have his own room, his own bed, his own everything." Moreover, the trial court found that mother and father "don't get along as well as they could" and that "just exacerbates the shortcomings of this sharing." The trial court also found "the child is going to be better off spending most of his time with one parent and having good quality [time] with the other." In view of these findings the trial judge ordered "joint legal custody" of the child with the mother having primary physical custody. He also ordered a modification in the visitation schedule.

We hold that the trial court found and considered changed circumstances and the best interests of the child when it modified the visitation order. On this record, we cannot say the trial

court was plainly wrong in finding that the child's best interest was served by the modifications made in the visitation schedule.

Accordingly, the judgment of the trial court is summarily affirmed.

<u>Affirmed.</u>