COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, O'Brien and Senior Judge Haley
Argued at Fredericksburg, Virginia

SHANEKA L. BEST, F/K/A
  SHANEKA L. MONTEZ

v.        Record No. 1319-18-4

KEVIN D. MONTEZ

MEMORANDUM OPINION* BY
JUDGE JAMES W. HALEY, JR.
MAY 14, 2019

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Bruce D. White, Judge

Rebecca Wade (Wade, Grimes, Friedman, Meinken & Leischner,
PLLC, on brief), for appellant.

Demian J. McGarry (Curran Moher Weis, P.C., on brief), for
appellee.

Shaneka L. Best (mother) appeals an order modifying custody and visitation. Mother argues

that the circuit court erred by (1) "refusing to hear [her] Motion to Reconsider;" (2) "modifying

custody when no material change in circumstances existed at the time of entry of the order to justify

a modification;" and (3) "drafting an Order intended to punish [mother]." We find no error and

affirm the decision of the circuit court.

BACKGROUND

"On appeal, we view the evidence in the light most favorable to . . . the party prevailing

below." D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335 (2005).

Mother and Kevin D. Montez (father) are the biological parents to a daughter born in

2013. Mother is an active duty member of the United States Air Force. While the parties were

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

married, they lived in California and moved to Virginia in April 2015 when the Air Force transferred mother to the Defense Intelligence Agency (DIA) on Bolling Air Force Base. Mother expected her assignment at the DIA to last thirty-six months, of which father was aware.

After the parties moved to Virginia, they separated and divorced. On July 8, 2016, the circuit court entered a custody and visitation order that awarded joint legal custody of the child to the parties and primary physical custody to mother. The circuit court awarded liberal visitation rights to father. At the time, the circuit court stated that father's visitation schedule was "as close to joint physical custody" that it had ever awarded because it wanted "both parents to play a significant hands-on role" in raising the child.

In October 2017, mother learned that the Air Force was transferring her to Seymour Johnson Air Force Base in North Carolina. She immediately informed father of her transfer. On February 15, 2018, mother filed a motion to modify visitation because of her transfer orders. She also stated in her motion that the child was scheduled to start kindergarten in the fall of 2018. Mother asked the circuit court to establish a new visitation schedule in light of her anticipated move to North Carolina.

In response, father filed a motion to modify custody and visitation and to enjoin the relocation of the child. He requested that the circuit court award him primary physical custody of the child and enjoin the child from moving to North Carolina. He also asked the circuit court to establish a visitation schedule for mother.

On June 12 and 13, 2018, the parties presented evidence and argument to the circuit court. Mother testified that in August 2017, she and father exchanged e-mails regarding the likelihood of mother being transferred at the end of her thirty-six months in the DIA. Father told mother that he wanted the child to stay in the area. Mother reiterated to him that she was a "mandatory mover" and could not stay in her current position. Mother testified that before

- 2 -

receiving her orders, she called the Air Force Personnel Center to try to stay in the area, but no positions were available for her.

In October 2017, mother learned that her new assignment would be in North Carolina and that she had to report before August 31, 2018. She notified father as soon as she learned about her assignment in North Carolina, and father repeated that he did not want the child to move. She expected her assignment in North Carolina to be for four years, after which she would be eligible to retire from the military. Since she was so close to retirement, mother had no intention of retiring from the military before she completed her final assignment.

Mother explained that she had been researching the area near the Seymour Johnson Air Force Base in North Carolina. She traveled with the child and her other daughter from a previous relationship to the area. Mother had not found a house yet, but had located a neighborhood that she liked. She also had researched the North Carolina schools. Mother testified that the child is very close to her half-sister and emphasized that the child always had lived with mother and the child's half-sister. Mother, however, admitted that she could not "point to anything in [the Northern Virginia] area with respect to her friends, with respect to the school, with respect to the opportunities that are available to her that [were] somehow wrong or detrimental to [the child's] best interests."

Father presented evidence about the child's life in Northern Virginia. Since May 2016, the child consistently attended gymnastics classes on Saturday mornings. Father also had enrolled the child in soccer and ballet, and they participated in activities at the library and community association. The child had several friends nearby, and she engaged in numerous activities with father, his friends, and his family. Father regularly took photographs and videos of the child engaged in her activities and sent them to mother. In addition, father had researched the local school and enrolled the child in kindergarten.

Mother and father lived fifteen to twenty minutes apart. Father consistently visited with the child, and he could recall only one time that he had to cut his visit short on a Sunday. Father asked to visit with the child more often than the court-ordered visitation. Once, mother allowed him to visit with the child while his best friend from California visited; however, on other occasions, mother denied father's requests to visit with the child so that they could go to the museum with family and friends. Over spring break in 2016, father asked for time with the child, but mother said that she "had plans with the girls." Father subsequently learned that the child was in daycare every day. Father further explained that mother had called him "plenty of times" to watch the child for her, and he did so.

Father testified that he had professional experience in Air Force assignments for enlisted personnel and officers. Father explained that officers and enlisted personnel could request "to stay in place for six months to a year or the next assignment cycle." Mother admitted that she did not make this request because she stated that it only applied to officers, not to her as an enlisted member. According to father, at the end of an Air Force member's assignment, he or she can request an assignment, but the Air Force is not obliged to honor the request and can assign a member to any duty station. The Air Force member then has to go to the new assignment or separate from the military. Mother testified that she called the Air Force Personnel Center and requested assignments in the National Capital Regional area, but she had no written documentation to confirm her requests. Mother also presented no evidence from corroborating witnesses about her efforts to stay in the area.

The parties presented their closing arguments, and the circuit court took the matter under advisement. On June 15, 2018, the parties appeared before the circuit court for the court's ruling. The circuit court reviewed in detail each of the Code § 20-124.3 factors. The circuit court found that "[b]oth parents have an excellent relationship with the child and both have been

positively involved in the child's life and, to a large extent, both accurately assess and meet the child's needs." Furthermore, the circuit court found that "both parents have played significant roles in the past and will do so in the future." The circuit court emphasized the sixth and seventh factors from Code § 20-124.3, which involved the propensity of the parents to support the child's relationship with the other parent, the denial of visitation, the willingness to maintain a close relationship with the child, and the parents' ability to resolve disputes. The circuit court found that these factors were "highly contested" because father believed that mother had not tried to stay in the Northern Virginia area and was trying to exclude him from the child's life. The circuit court highlighted mother's refusal to let father visit with the child over spring break in 2016 because she had plans, but in reality, the child was in daycare. The circuit court noted that this evidence was "unrebutted and not denied."

The circuit court reviewed the facts surrounding the necessity of mother's move to North Carolina. It found that mother testified that she made a phone call to see if there were any available positions in Northern Virginia, but she offered "no corroboration of any type" of her efforts to stay in the area. The circuit court concluded that "no real substantial effort to stay in the area was made."

The circuit court held that "little if any independent benefit accrues to the child due to this move" to North Carolina. It further held that the move would have a negative impact on the child's relationship with father, who was "very active," involved in the child's activities, and had "almost a 50/50 physical custody" arrangement.

The circuit court then focused on the best interests of the child. The circuit court held that both parents were "good, caring and attentive parents, and both would be good custodians" of the child. However, the circuit court found that "mother made no real effort to avoid the move, likely due to the prior animosity between the parties." The circuit court held that the

move to North Carolina would not be in the child's best interests and enjoined the move. The circuit court awarded joint legal custody to the parties and primary physical custody to father. It established a holiday and summer visitation schedule for mother and asked the parties to try to work out a weekend schedule. The matter was continued to July 20, 2018 for entry of the order.

On July 6, 2018, mother filed a motion to reconsider. After receiving the circuit court's ruling, mother contacted her supervisor and others, who worked on her behalf to cancel her orders to report to North Carolina due to a "family hardship." Mother received new orders to report to Chantilly, Virginia by September 30, 2018. Attached to mother's motion to reconsider were copies of her orders and letters from two people who described the efforts made to obtain a new assignment for mother.

Father filed a pleading opposing mother's motion to reconsider. Father argued that mother could have found a new assignment in Northern Virginia earlier, but did not do so. Father asserted that her actions "expose[d] the Mother's true attempt to disrupt the strong bonds between [the child] and her father." Father objected to the circuit court considering the letters, but stated that "[t]hey appear to be the very type of contacts the Mother could have capitalized on beginning in October 2017 not after an unfavorable ruling."

On July 20, 2018, the parties appeared before the circuit court for entry of the custody and visitation order and mother's motion to reconsider. Mother told the circuit court that a representative from the Air Force Personnel Center and mother's supervisor were present to testify "as to the change in circumstances if the Court is willing to hear from them;" otherwise, she requested a hearing on her motion to reconsider. Mother argued that since her orders to North Carolina were cancelled, there was no longer a material change in circumstances that justified a modification of physical custody. The circuit court denied mother's request and found

that mother "created a change in circumstances by doing something different after the trial because she did not like the result."

The circuit court found that mother "played . . . fast and loose with the Court, made personally no effort to do all the things that she could have done, or presented evidence to the Court of options that she could have pursued, that would have prevented [the parties] from ever being in this position." The circuit court stated that it "made a ruling based on the best interest of the child based on the circumstances before [it] which were to some extent . . . manufactured by [mother] by her failure to make any real effort to try to stay in this area." The circuit court declined to change its prior custody ruling, but modified the visitation schedule since mother was no longer moving to North Carolina. On August 13, 2018, the circuit court entered an order reflecting its ruling. On August 20, 2018, mother filed objections to the order. This appeal followed.

ANALYSIS

*Motion to Reconsider*

Mother argues that the circuit court erred by refusing to hear evidence related to her motion to reconsider.[1] Mother asserts that she should have been allowed to present evidence about the changes in her military assignments, which she compares to after-discovered evidence.

"Motions to reopen an evidentiary record or to reconsider a prior ruling involve matters wholly in the discretion of the trial court." Thomas v. Commonwealth, 62 Va. App. 104, 109 (2013); see also Winston v. Commonwealth, 268 Va. 564, 620 (2004) ("We review a trial court's

---

[1] Mother relies on the Fairfax County local rules to support her argument. However, as discussed in Cloutier v. Queen, 35 Va. App. 413, 422 (2001), the local rules "[are] not Rules of the Court." "Code § 8.01-4 provides that 'local rules' are limited to 'those rules necessary to promote proper order and decorum and the efficient and safe use of the courthouse facilities and the clerks' offices.' 'Local rules' cannot affect the substantive rights of the litigants." Id. at 421-22. The local rules are not binding legal authority in this matter.

denial of a motion to reconsider for an abuse of discretion."). "A litigant's 'right to relief on such rehearing depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense at or before the time of entry of the decree which he seeks to have modified.'" Id. (quoting Downing v. Huston, Darbee Co., 149 Va. 1, 9 (1927)). "Without valid excuse, no party who has had his day in court can reopen the hearing . . . on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made." Id. at 109-10 (quoting Holmes v. Holmes, 7 Va. App. 472, 482 (1988)). "This 'valid excuse' standard typically requires a showing that the party has exercised due diligence in making the best of prior opportunities to address the issue . . . ." Id. at 110. Whether a trial court should reopen a case and reconsider its prior rulings is "a matter we review under the highly deferential abuse-of-discretion standard." Id. at 111.

Mother proffered that her orders to report to North Carolina were cancelled and that she now had orders to report to Chantilly, Virginia. The circuit court found that mother did not "make any real effort" to try to stay in Northern Virginia when she first appeared before the court and then, after she received a ruling that she did not like, she obtained orders to stay in the area. Mother's change in military assignments was not after-discovered evidence or a valid excuse for reconsidering the court's prior ruling, rather it was mother's reaction to a ruling that was not in her favor.

Rule 4:15(d) states that "[o]ral argument on a motion for reconsideration . . . shall be heard orally only at the request of the court." Contrary to mother's assertions, the circuit court did not have to grant her a hearing on her motion to reconsider and reasonably declined to do so. The circuit court did not abuse its discretion by refusing to hear evidence on mother's motion to reconsider.

*Material change in circumstances*

Mother argues that the circuit court erred in modifying custody when no material change in circumstances existed at the time of the entry of the final order. Mother emphasizes that she originally filed her motion to amend custody and visitation because she received military orders transferring her to Seymour Johnson base in North Carolina; however, when the circuit court entered the final order on August 13, 2018, mother's orders had changed and she no longer was moving to North Carolina. She asserts that the circuit court erred in granting primary physical custody to father because there was no material change in circumstances.

"Custody determinations must be based upon the child's best interest as viewed under the circumstances existing at the time of the decision." Cloutier v. Queen, 35 Va. App. 413, 425 (2001). "Before evaluating whether to modify a [custody or visitation] decree, the court must find a material change in circumstances." Wheeler v. Wheeler, 42 Va. App. 282, 289 (2004). "[T]he parent seeking to obtain a transfer of custody bears the burden to show a change in circumstances following the most recent custody award." Hughes v. Gentry, 18 Va. App. 318, 322 (1994). "'Changed circumstances' is a broad concept and incorporates a broad range of positive and negative developments in the lives of the children." Wheeler, 42 Va. App. at 289 (quoting Parish v. Spaulding, 26 Va. App. 566, 573 (1998), aff'd, 257 Va. 357 (1999)). "Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." Id. (quoting Ohlen v. Shively, 16 Va. App. 419, 423 (1993)).

Here, mother initially filed her motion to modify custody and visitation because of her anticipated transfer to North Carolina. The parties presented evidence and argument to the circuit court for two days based on this change of circumstances. However, mother's pending move was not the only evidence presented regarding the change of circumstances since the July

8, 2016 custody and visitation order. Both parties emphasized that the child was starting kindergarten in the fall of 2018. During her closing argument, mother recognized this change of circumstances and asserted that the child's routine was changing, regardless of whether she moved to North Carolina.

Furthermore, the circuit court heard evidence about the parties' involvement with the child. Father presented evidence about the child's life in Northern Virginia and with him. He testified about her activities and friends. The circuit court also heard evidence that he routinely sent photographs and videos of the child to mother while the child was with him. He also presented evidence that mother had denied several of his requests for extra visitation.

After hearing the evidence and argument presented over the two days, the circuit court reviewed all of the Code § 20-124.3 factors. The circuit court held that the move to North Carolina was not in the child's best interests and enjoined the child from moving. The circuit court concluded that "mother made no real effort to avoid the move, likely due to the prior animosity between the parties." The circuit court further held that "the closest thing to the status quo for [the child] is to be here with her father and the school system with which she is familiar and an area where she has friends and support, and that that will ease the transition to not being with the parents on the current schedule."

At the July 20, 2018 hearing, mother acknowledged that the circuit court already heard all of the evidence on the Code § 20-124.3 factors. She asked the circuit court to reconsider its ruling based on her intention to remain in Northern Virginia. The circuit court denied mother's request for a new custody trial and said that "some of the things . . . were . . . decided because of her attitude about the father and how often the father should see the child and be involved." Contrary to mother's arguments, the circuit court did not abuse its discretion in modifying

custody because there were other changes in circumstances beyond mother's anticipated move to North Carolina.

*Final order*

Mother argues that the circuit court's final order was intended to punish her. However, the circuit court immediately dismissed this argument when raised by mother's counsel during the July 20, 2018 hearing by stating: "There's no punishment element to it. I made a ruling based on the best interest of the child based on the circumstances before me which were to some extent . . . manufactured by your client by her failure to make any real effort to try to stay in this area."

"[T]here is a presumption on appeal that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." D'Ambrosio, 45 Va. App. at 335. "When a court hears evidence at an *ore tenus* hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Wheeler, 42 Va. App. at 288.

The circuit court heard evidence and argument for two days, and then reviewed in detail the Code § 20-124.3 factors. It held that the child's best interests were not to move to North Carolina, and instead, to live primarily with father in Northern Virginia. There is nothing in the record to support mother's argument that the circuit court entered the final order to punish mother. Rather, the record reflects that the circuit court carefully considered the Code § 20-124.3 factors in determining the best interests of the child. Furthermore, when presented with the change in mother's move to North Carolina, the circuit court modified its visitation ruling so that mother could visit more often with the child. The circuit court did not abuse its discretion in awarding primary physical custody of the child to father and awarding visitation to mother.

*Attorney's fees*

Father asks this Court to award him attorney's fees and costs incurred on appeal. See Rule 5A:30(b); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). Having reviewed and considered the entire record in this case, we deny father's request for attorney's fees and costs.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.