COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Causey and Frucci

MATTHEWS GASKINS, III

v.     Record No. 1368-24-1

JODY GASKINS

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 5, 2025

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Charles J. Maxfield, Judge Designate

(Rebecca C. Lawrence; Lawrence Law, PLLC, on brief), for
appellant.

(Kenneth B. Murov; Z. Aliye Kidwell; Barbara A. Selje, Guardian ad
litem for the minor child; Murov & Kidwell; Selje Law, PLLC, on
brief), for appellee.


Matthews Gaskins, III (father) appeals the custody and parenting time order that awarded

Jody Gaskins (mother) joint legal and sole physical custody of the parties' minor child and

permitted mother to relocate with the child to Florida. On appeal, father argues that mother

failed to prove that relocation was in the best interest of the child. For the following reasons, we

affirm.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument." *See* Code § 17.1-403(ii)(c)**;** Rule 5A:27(c).

BACKGROUND[2]

Mother and father were married for ten years, until they finalized their divorce in April 2021; one child, J.G.,[3] was born from the marriage.[4]  Mother and father incorporated a settlement agreement into the final divorce decree that awarded joint legal custody, with primary physical custody to mother.  The agreement awarded father visitation every other weekend, two weeks in the summer, and alternating holidays.

After mother notified him of her intention to relocate with J.G. to Florida, father moved to amend custody and visitation in the Williamsburg and James City County Juvenile and Domestic Relations District Court (JDR court).  Mother then filed a notice of relocation with the JDR court.  After a hearing, the JDR court granted the parties joint legal custody, and father temporary primary physical custody of J.G.  In a separate order, the JDR court awarded mother temporary visitation for six consecutive weeks.  Mother then moved to Florida but appealed the order to the Circuit Court of the City of Williamsburg and County of James City.

At the circuit court hearing, mother testified that she found new employment in Florida, which included a $40,000 pay raise, and that she mostly worked remotely.  Mother planned to build a home in Florida, so J.G. would have her own bedroom.  Mother knew father disagreed with the move, but she was unaware that father had filed for physical custody of J.G. until she received the paperwork.  After father gained physical custody of J.G. via the JDR court order, mother felt that he had failed to promote her relationship with J.G.  Mother testified that she was

---

[2] We view the evidence in the light most favorable to mother as the prevailing party. *See Rainey v. Rainey*, 74 Va. App. 359, 368 n.1 (2022).  When a circuit court hears evidence ore tenus, its findings "will not be disturbed on appeal unless they are plainly wrong or without evidence to support them." *Moore v. Joe*, 76 Va. App. 509, 516 (2023) (citing *Gray v. Gray*, 228 Va. 696, 699 (1985)).

[3] We use initials, rather than names, to protect the privacy of the minor child.

[4] Mother also has an older daughter from a previous relationship.

unaware if J.G. participated in extracurricular activities since she lived with father. Mother also expressed her concern about J.G.'s personal hygiene under father's care, including having to teach her about skin care, shaving her underarms, and using feminine hygiene products. Mother was concerned that J.G. was no longer with her sister. Mother described her relationship with J.G. as "[v]ery distant." According to mother, father was non-responsive when she attempted to contact him about J.G. But mother acknowledged that father did not deny her access to J.G.

Father testified that, while mother had physical custody of J.G. in Virginia, he was very involved in J.G.'s life. He helped J.G. with her homework, attended school events, and spoke with her on a regular basis. He expressed concern about logistics if J.G. moved to Florida with mother. Father felt it was up to mother to promote her relationship with J.G., but he encouraged J.G. to speak with mother and agreed that mother had a positive impact on J.G. J.G. participated in sports and excelled in school. Father expressed his willingness to talk to mother on the phone only about "important topics," but preferred to discuss other issues via email or text message. Father's partner, Alicia Boutin, had a positive relationship with J.G. and supported father's caretaking.

Dr. Brent Peterson, a licensed professional counselor, conducted a psychological evaluation of J.G. J.G. told Dr. Peterson that she preferred to live with father. Dr. Peterson found that both parents loved J.G., but that she had difficulties in her relationship with mother. Dr. Peterson diagnosed J.G. with social anxiety disorder and parent-child relational problem, which is "characterized by difficulties in the relationship between a parent or parents and their child." Dr. Peterson concluded that J.G.'s disconnect with mother resulted from mother's decision to move to Florida. Dr. Peterson recommended counseling and therapy for J.G. and noted that spending time with mother would help improve their relationship.

At the conclusion of evidence, the circuit court granted mother temporary primary physical custody of J.G. for one-year, to be reevaluated. The order awarded mother and father joint legal custody. The circuit court found that the case did not present a relocation determination, because mother had already relocated without J.G. The circuit court awarded father visitation that included Thanksgiving, spring break, and ten days of winter break, and ordered mother to pay for J.G.'s transportation costs. Shortly after the temporary order, J.G. moved with mother to Florida.

Around a year later, the parties reconvened for a hearing to review the temporary custody order. In preparation for the hearing, the guardian ad litem drafted a report and recommended that mother maintain physical custody of J.G. The GAL reported that since moving to Florida, J.G. had grown "tremendously." J.G. reported to the GAL that she was very happy in school and that she "has been able to reestablish her relationship with her mother and sister and at the same time maintain a good relationship with her father." The GAL noted that both mother and father appeared to love J.G., but they needed to improve their communication skills. Because J.G. had experienced positive development since her move to Florida, the GAL recommended that the circuit court award joint legal custody to mother and father, physical custody to mother, and visitation to father consisting of alternating holidays and seven to eight weeks over the summer.

At the time of the hearing, mother had remarried and lived in Florida with her husband, J.G., and her older daughter. After J.G. moved to Florida, she and mother attended counseling together, and their relationship and communication greatly improved. J.G.'s relationship with her sister was also very important to her.

J.G. attended a public charter school close to their home; before school started, father traveled to Florida and attended the orientation. While J.G. initially struggled in some of her classes, she improved her grades. J.G. played soccer and participated in band. Mother kept

father apprised of J.G.'s appointments, school events, and concerts. Mother sent photos of J.G. to father, and father traveled to Florida several times to attend J.G.'s concerts and games. But father expressed to the circuit court that it would be difficult for him to see J.G. as often if the relocation was permanent.

Father worked hard to maintain contact with J.G.; he regularly spoke on the phone with her, and many of the calls lasted between 30 and 90 minutes. Father was familiar with J.G.'s daily life, including school, extracurriculars, and her friends. J.G. traveled to Virginia for visits with father. Once, mother permitted J.G. to spend three more days with father than required by the visitation order. Occasionally, J.G.'s sister accompanied her to spend time with father. Father planned to encourage J.G. to maintain the relationship with her sister if he gained physical custody; his home even had an extra bedroom for J.G.'s sister to stay when she visited.

Father described his relationship with J.G. as "great" when she lived with him. J.G. excelled in school and participated in soccer when she lived with him in Virginia. She also had the opportunity to be involved in band through school in Virginia. Father provided mother with information about J.G.'s schooling when she lived with him. J.G. had regular contact with extended family when she lived in Virginia, but this diminished when she moved to Florida.

At the close of evidence, father asserted that mother had a "specific burden" to establish that his relationship to J.G. could be maintained with J.G.'s move, because the case presented a relocation request. He argued that the evidence supported a finding that the move had harmed his relationship with J.G.

The circuit court acknowledged father's relocation argument, but again found that the issue did not involve a request to relocate J.G. Nonetheless, the circuit court found that father had done an "excellent job" of maintaining his relationship with J.G., which "undercut" his claim that the relationship had been harmed. The circuit court added that J.G. had "a wonderful house,

a good school" in Florida, that she had a close relationship with her sister, and that her relationship with her mother had improved greatly. The circuit court found that J.G. had "repaired the relationship with" mother and that there was no evidence that her relationship with father had been damaged.

The circuit court thoroughly reviewed the Code § 20-124.3 factors, finding that J.G. had a good relationship with both parents and that the move benefited J.G.'s relationship with mother and sister in Florida. The circuit court found that father's relationship with J.G. had not been damaged by the move and that remaining in mother's primary physical custody would be in J.G.'s best interests.

The circuit court granted primary physical custody to mother with extensive parenting time to father, including seven consecutive weeks during summer break, alternating Thanksgiving break and spring break, half of winter break, and overnight parenting time in Florida when J.G. had long weekends off from school. Father appeals.

## ANALYSIS

Our analysis begins with "the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). "[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Khalid-Schieber v. Hussain*, 70 Va. App. 219, 228 (2019) (alteration in original) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)). "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." *Wynnycky*, 71 Va. App. at 193 (quoting *Bedell v. Price*, 70 Va. App. 497, 504 (2019)).

"We review the trial court's decisions on custody and visitation for an abuse of discretion." *Rainey v. Rainey*, 74 Va. App. 359, 376 (2022). "[T]he phrase 'abuse of discretion' means that the

circuit court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). Only when reasonable jurists could not differ can we say an abuse of discretion has occurred. *Id.* "[W]e review the trial court's statutory interpretations and legal conclusions *de novo*." *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (alteration in original) (quoting *Navas v. Navas*, 43 Va. App. 484, 487 (2004)).

Code § 20-124.3 provides ten factors for the court to consider "[i]n determining best interests of a child for purposes of determining custody or visitation." Even though "a circuit court must consider the statutory factors found in Code § 20-124.3, it determines how to weigh those factors and 'is not "required to quantify or elaborate exactly what weight or consideration it has given to each[.]"'" *Wynnycky*, 71 Va. App. at 201 (alteration in original) (quoting *Brown v. Brown*, 30 Va. App. 532, 538 (1999)). On review, "we do not reweigh the factors to see if we would have reached a different conclusion." *Id.* So, "unless the court fails to consider the required statutory factors or applies an incorrect legal standard, [its] decision as to whether a change in custody [or visitation] would be in the best interests of the child is reversible . . . only if 'plainly wrong or without evidence to support it.'" *Surles v. Mayer*, 48 Va. App. 146, 172 (2006) (quoting *Yopp v. Hodges*, 43 Va. App. 427, 439 (2004)).

Father contends that the circuit court erred in failing to view this case as a relocation dispute, which he argues includes additional factors the court had to consider. Father asserts that mother had to establish that the relocation to Florida would not disrupt *his* relationship with J.G. and that J.G. would independently benefit from the relocation. Father argues that the evidence established only that mother benefited from the move, as she remarried and obtained a new job, and that any detriment to her relationship with J.G. was a result of her choice to move.

- 7 -

"Although no Virginia statute specifically addresses the relocation of a custodial parent, relocation is generally considered to be an aspect of child custody and visitation." *Sullivan v. Jones*, 42 Va. App. 794, 806 (2004). In relocation cases, courts often consider a separate independent benefit to the child or weigh any benefits to the custodial parent that inure to the benefit of the children against the harmful effects, including an adverse impact upon the relationship, between the child and the non-custodial parent when conducting its best interest analysis. *See, e.g.*, *Judd v. Judd*, 53 Va. App. 578, 588 (2009); *Wheeler v. Wheeler*, 42 Va. App. 282, 290 (2004); *Petry v. Petry*, 41 Va. App. 782, 789 (2003). But the ultimate question in a relocation case remains whether the relocation is in the child's best interests; the welfare of the child, not the rights of the parent, "is the polar star by which the discretion of the court is guided in awarding . . . custody." *Coffee v. Black*, 82 Va. 567, 569 (1886); *see also Wheeler*, 42 Va. App. at 288. "[T]he trial court may consider any resulting positive or negative changes in the child's life, regardless of whether those changes occurred after the relocation." *Surles*, 48 Va. App. at 175.

In explaining its holding, the circuit court expressly considered the Code § 20-124.3 factors in determining J.G.'s best interests. The circuit court found that J.G. had positive relationships with both parents and emphasized that since living together, mother and J.G. had repaired their relationship. The circuit court emphasized that living in Florida gave J.G. "a fair chance at a relationship with her mother." J.G. had many friends and a close relationship with her sister. J.G. had thrived in school and participated in soccer and band. Although mother and father communicated poorly, the circuit court found that mother never denied father access to J.G. The circuit court found that J.G. was happy, adjusted, and well-settled in her new environment.

Father argues that the improvement of mother's relationship with J.G. should not be considered an independent benefit, because the original decline of that relationship had resulted from mother's choice to move. But we find no error in the circuit court's finding that J.G. benefited

from a positive relationship with both parents or in its consideration of the improvement of the relationship with mother since J.G. moved to Florida. The circuit court also considered the impact of J.G.'s move on her relationship with father. Although J.G. had less frequent visitation with her father and paternal relatives, father maintained a strong relationship with J.G. Mother also supported J.G.'s relationship with father; she sent photos and updates and allowed J.G. to spend extra time with him during a visitation. For these reasons, we hold that there is credible evidence supporting the circuit court's conclusion that J.G.'s best interests would be served by awarding physical custody to mother, thereby allowing J.G. to live in Florida. Accordingly, we affirm that judgment.

Appellate Attorney Fees

Mother requests an award of appellate attorney fees in this matter. The decision to award attorney fees and costs incurred on appeal is within the sound discretion of the appellate court. *See* Rule 5A:30; *O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). The Court's decision is not limited to whether a party prevailed on appeal but considers whether the issues raised were "frivolous" and the equities of the case. *See Wright v. Wright*, 61 Va. App. 432, 470 (2013) (quoting *O'Loughlin*, 23 Va. App. at 695). Having carefully reviewed the record on appeal, we decline to award attorney fees in this matter.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*